L. P. Cavett Co., Appellee, v. District Lodge 34, Lodge 804, International Association of Machinists, et al., Appellants.*

(No. 8150—Decided July 2, 1956.)

*Mr. J. Mack Swigert,* for appellee.
*Mr. J. W. Brown* and *Mr. Jonas B. Katz,* for appellants.

*Per Curiam.* The simple question here presented is whether, after the plaintiff has complied with all procedure required to determine the respective rights of the plaintiff and the rights of the defendants before the National Labor Relations Board and the board has, after an election ordered by it and duly held, rendered judgment adversely to the defendants, holding they have no authority to act as the bargaining agent in the premises, the defendants, ignoring such judgment, may demand of the plaintiff that they be considered as such bargaining agent and, upon refusal of plaintiff, in compliance with the order of the board, lawfully picket the business of plaintiff.

That question involves a corollary question—is the jurisdiction of the state courts completely abrogated, so that such courts may not by the power of injunction protect the plaintiff

*Motion to certify the record overruled, June 19, 1957. Appeal dismissed, 166 Ohio St., 508.

from the refusal of the defendants to acknowledge the order of the National Labor Relations Board?

There is no dispute between the plaintiff and its employees which has not been adjudicated by the National Labor Relations Board. Can it be that the state courts are helpless to protect the plaintiff from the willful refusal of the defendants to abide by the judgment of the board, especially after agreement to submit such matter to the board?

*Grimes & Hauer, Inc.,* v. *Pollock,* 163 Ohio St., 372, 127 N. E. (2d), 203, has no application to the instant facts. In that case, the employer resorted to the state courts before having his dispute with the union adjudicated by the board.

If the defendants may ignore once the judgment of the board they could ignore it a dozen or more times, forcing the plaintiff over and over again to submit a judgment, adverse to the union, to be repeatedly adjudicated. Such could not have been the intention of Congress in enacting the National Labor Relations Act.

Until Congress has definitely held that state courts are completely ousted from any jurisdiction to grant any relief in equity from such a flagrant situation as here exists, the state courts, after original submission of the parties to the National Labor Relations Board, have the power to protect such parties from irreparable loss for which no other adequate remedy at law exists. Some attempt is made by the defendants to predicate this repeated demand for recognition as the bargaining agent on the discharge of one of plaintiff's employees. This was made the basis of a complaint to the National Labor Relations Board, and the adjudication of the board was adverse to the defendants. So that it is apparent that the claims of the defendants are predicated upon the same basis as that previously adjudicated against them by the National Labor Relations Board.

No actual labor dispute exists. Picketing under such circumstances is an invasion of the rights of the employees not to participate in union activity and of the plaintiff's right to operate its business without wrongful interference, which would, and does, violate the public policy of the state.

The same decree as that entered in the trial court, perma-

nently enjoining interference with the plaintiff's business by defendants, may be entered as the decree of this court.

*Judgment accordingly.*

Ross, P. J., and HILDEBRANT, J., concur.

MATTHEWS, J., concurring. I cannot agree that this case presents either the "simple question" or the "corollary question" propounded in the first two paragraphs of the opinion of my associates.

The undisputed facts are that the plaintiff is a corporation and was at the time in question engaged in interstate commerce, and the defendant District Lodge 34, Lodge 804, International Association of Machinists, A. F. L., on or about February 14, 1955, filed with the National Labor Relations Board a petition for an election to determine the representation of certain of its employees who were engaged in interstate commerce. On March 23, 1955, a stipulation was signed and filed with the board agreeing to the election and expressly waiving the making of findings of fact and conclusions of law prior to the election, which would have been required in the absence of such stipulation. The plaintiff alleged that the defendant union by signing the stipulation agreed to abide by the results of such election. While, without doubt, it would have been bound by the election, whether conducted with or without stipulation, I find no provision of the stipulation upon which to found a contractual obligation to be bound by the result.

On March 31, 1955, the election was held and a majority of the employees voted against having the defendant union as their representative in collective bargaining. The union filed no objection to the election, and, on April 8, 1955, the National Labor Relations Board certified the result of the election to the parties.

Thereafter, on April 26, 1955, the defendant union demanded that the plaintiff immediately enter into a collective bargaining agreement with it on behalf of the plaintiff's employees and, also, that the plaintiff re-employ the defendant, John Ernest, a member of defendant union whom the plaintiff

had discharged because, as it claimed, of dishonesty, but, as claimed by defendants, because of union activities. The defendant union notified the plaintiff that if it did not comply at once its place of business would be picketed.

The plaintiff refused the demand, and, on April 27, 1955, the defendants caused the plaintiff's place of business to be picketed. Thereafter, on the same day, this action was filed to enjoin the picketing, and a temporary restraining order was granted. On the next day, the defendant, John Ernest, filed with the National Labor Relations Board his complaint against the plaintiff, alleging that his discharge was an unfair labor practice in that it was because of his activities on behalf of the defendant union.

On August 8, 1955, the regional director notified the parties that it did not appear that there was sufficient evidence of violation to warrant further proceedings at that time and, for that reason, he was refusing to issue a complaint.

The picketing, prior to the temporary restraining order, was not accompanied by any violence or disorder, and, of course, there has been no picketing since.

Counsel for the plaintiff seems to base his right to an injunction on the stipulation signed by the parties consenting to the election. He interprets that stipulation to be an agreement to abide by the result of the election. As already noted, I do not so construe the stipulation and for that reason do not regard the case of *General Electric Co.* v. *Union,* 93 Ohio App., 139, 108 N. E. (2d), 211, as applicable.

Upon first consideration of this case, my conclusion was that *Grimes & Hauer, Inc.,* v. *Pollock,* 163 Ohio St., 372, 127 N. E. (2d), 203, and *Garner* v. *Union,* 346 U. S., 485, 98 L. Ed., 228, 74 S. Ct., 161, were applicable and required a reversal of this judgment, but, on June 4, 1956, the Supreme Court of the United States decided the case of *United Automobile, Aircraft & Agricultural Implement Workers of America* v. *Wisconsin Employment Relations Board,* 351 U. S., 266, 100 L. Ed., 666, 76 S. Ct., 794, which causes me to revise my conclusion.

In the Wisconsin case the picketing, which was enjoined, was apparently aggravated by some violence. In any event it was an unfair labor practice under both the National Labor

Relations Act and the Wisconsin Employment Peace Act. The Supreme Court of the United States affirmed the judgment of the Wisconsin Supreme Court, enjoining the picketing. In the opinion, concurred in by six of the Justices, it is said, at page 274: "As a general matter we have held that a state may not, in the furtherance of its public policy, enjoin conduct 'which has been made an "unfair labor practice" under the federal statutes' * * *. But our post-Taft-Hartley opinions have made it clear that this general rule does not take from the states power to prevent mass picketing, violence, and overt threats of violence."

In view of this more recent decision of the Supreme Court of the United States, I am of the opinion that the fact that the acts enjoined come within the category of unfair labor practices, as defined by Section 8 of the Labor Management Relations Act, 1947 (Section 158, Title 29, U. S. Code), does not render injunction void as beyond the jurisdiction of the state court. In this connection, I call attention to the fact that the provision in section 8, making picketing of all sorts to compel an employer to designate a particular union as the bargaining agent an unfair labor practice, is in harmony with the Ohio rule making peaceful picketing to compel unionization, when no dispute exists between the employer and his employees, unlawful.

For these reasons, I concur with my associates that the same decree as was entered in the trial court should be entered in this court.