LOCAL 755, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL-CIO

— v. —

COUNTRY CLUB EAST, INCORPORATED

— AND —

J. D. BECK, B. T. BLAIR, B. M. WAGONER, E. W. DELAPP, FRED E. SMITH, W. C. ALBERT, H. J. LEONARD AND S. G. BAILEY

— v. —

COUNTRY CLUB EAST, INC.

No. 40

(Filed 14 March 1973)

1. **Malicious Prosecution § 3— prior criminal prosecution — necessity for valid process**

    When a prior criminal prosecution is the subject thereof, an action for malicious prosecution cannot be maintained unless the prior criminal prosecution was based on valid process.

2. **Injunctions § 16— remedies of person wrongfully restrained**

    When a temporary restraining order is dissolved as having been improvidently issued, the following remedies are available to the party who has been wrongfully restrained: (1) he may recover damages from the party who procured the restraining order and the sureties on his injunction bond without proof of malice or want of probable cause, or (2) he may institute an action for malicious prosecution against the party who procured the restraining order and recover damages without regard to the limit of the bond upon establishing the elements necessary to constitute an action for malicious prosecution.

3. **Malicious Prosecution § 2; Injunctions § 16— temporary injunction — court of general jurisdiction — no jurisdiction of subject matter**

    A party who procures a temporary injunction from a court of general jurisdiction will not be permitted to defeat an action for

malicious prosecution based on the procurement thereof solely on the ground that the court which issued the restraining order did not have jurisdiction of the subject matter.

4. **Malicious Prosecution § 1; Injunctions § 16— damages for wrongful injunction — violation of injunction not required**

A party is not required to violate a restraining order issued by a court of general jurisdiction in order to preserve his right to recover damages in the event it is determined that he was unlawfully restrained.

5. **Malicious Prosecution § 13; Master and Servant § 17— wrongful restraint of picketing — alleged informational picketing — error in dismissal of malicious prosecution action**

In a malicious prosecution action based upon defendant's procurement of a temporary restraining order preventing a union local and its members from picketing defendant's motel construction site, plaintiffs' allegations that they were engaged only in establishing "informational picket lines" and the absence from the restraining order of any reference by name to "informational picket lines" were insufficient as a basis for dismissal of the action on the ground that the order did not purport to restrain the pickets from what they were doing.

ON *certiorari* to review the decision of the Court of Appeals reported in 14 N.C. App. 744, 189 S.E. 2d 760, which affirmed a judgment for defendant entered by *Gambill, J.,* at the 31 January 1972 Session of FORSYTH Superior Court, docketed and argued in the Supreme Court as No. 59 at the Fall Term 1972.

The plaintiff in one of these actions is Local 755, International Brotherhood of Electrical Workers, AFL-CIO, referred to hereafter as Local 755. J. D. Beck is the plaintiff in the other action.

The complaints allege in substance that Local 755 and its representatives conducted an organizing campaign among employees of Salem Electric Company, referred to hereafter as Electric Company; that during August 1970, the substantial majority of these employees retained Local 755 to conduct negotiations for them with Electric Company; that Beck, an employee of Electric Company, participated in the campaign of Local 755 to organize the employees of Electric Company; that on or about 1 September 1970, Local 755 and its members and representatives, including Beck, engaged in a work stoppage at several locations where Electric Company was working and established "informational picket lines" near the entrance to the premises of defendant, Country Club East, Inc., informing

the public of Electric Company's refusal to bargain with Local 755; and that the picketing was lawful and peaceful and was the only effective method available to plaintiffs to obtain recognition by Electric Company of Local 755 as the bargaining agent for Electric Company's employees.

The plaintiffs further allege, and defendant admits, that on 4 September 1970, defendant applied for and procured from the presiding judge, Forsyth County Superior Court, an order preventing the plaintiffs herein, and all other persons acting in concert with them, jointly and severally, "from striking, picketing, inducing others to strike or to stop work, patroling, or by any other means, or in any other manner, interfering with or disrupting the normal operations of the plaintiff's [Country Club East, Inc.'s] motel construction on said premises, for the purpose of forcing, inducing or encouraging, or in any other manner hindering, interfering or stopping the passage of vehicles to and from plaintiff's premises, or encouraging employees of plaintiff or of plaintiff's contractor or subcontractors, or others working on said premises, in refusing to pass to and from said premises and conduct normal work for plaintiff in accord with the terms and provisions of the contracts between plaintiff and said contractor, subcontractors, or others working on said premises, and in any manner stopping or hindering the normal operation of local or interstate commerce vehicles to, from, or upon the premises of plaintiff or the public highways abutting thereon."

Plaintiffs further allege, and defendant admits, that defendant did not file a complaint in the prior action but "took a voluntary dismissal of the cause before a trial on the merits was had."

Plaintiffs further allege that the institution of the prior action by defendant "interfered with and restrained" Local 755 in its efforts "to represent its constituents," and Beck "in his efforts to establish contract relations with others for his own benefit"; that the institution thereof constituted an intentional and wrongful use of legal process for an improper purpose, namely, to accomplish its own selfish purposes without regard to the rights of plaintiffs, and this conduct of defendant was reckless and malicious.

Local 755 prayed that it recover compensatory damages of $50,000 and punitive damages of $50,000. Beck prayed that he

Electrical Workers Union v. Country Club East

recover compensatory damages of $5,000 and punitive damages of $5,000.

Except as indicated above, the answers filed by defendant denied plaintiffs' allegations. As a separate defense, defendant alleged that Local 755 "was not a party to the law suit which this defendant instituted to enjoin picketing and, therefore, has no standing whatsoever to bring this action." Each answer alleged that "[t]he existence of probable cause for the injunctive relief obtained by this defendant was conclusively established by the Order signed by the Honorable Harvey A. Lupton, Resident Superior Court Judge of Forsyth County, on 4 September 1970, which is pleaded in bar of this action."

The record contains a "STIPULATION," signed by counsel for the respective parties, which begins: "UPON the trial of this action, the parties thereto stipulate. . . . " These stipulations, in addition to matters admitted in the pleadings and set forth above, are summarized, except when quoted, below:

In the prior action, the plaintiff therein (defendant herein) filed "an application for a temporary restraining order supported by the affidavit of one Ira B. Hall. . . . " An order to show cause was served with the summons and temporary restraining order. "[W]ithin ten (10) days following the issuance of the temporary restraining order by the Court a hearing was had or a meeting was held by the parties and their counsel with Judge Lupton and the matter was continued on motion of the Court until the 14th day of September, 1970 without any findings on the part of the Court or a reason for the continuance of the order." The parties again met with Judge Lupton on 14 September 1970. At that time, "the construction job which was the subject of said temporary restraining order, had been completed insofar as the orders [sic] of this action were concerned." On 14 September 1970 Judge Lupton signed an order entitled "VOLUNTARY DISMISSAL" dated 9 September 1970. "[T]he employees of various contractors who had previously refused to cross the existing picket lines as of the date of the injunction thereafter entered upon the premises after the picket line was removed by the Court's order and completed their portion of the work and left, and that their crossing of the picket lines was no longer at issue on the 14th day of September 1970." "[A]fter the order of September 4, 1970 was issued by Judge Lupton and served upon the parties, picketing ceased

---

Electrical Workers Union v. Country Club East

---

at the Country Club East, Inc., sites and was not thereafter resumed by the plaintiffs." "[W]hile the picket line was in existence certain drivers of trucks furnishing materials to the construction job on Country Club East, Inc.'s property refused to cross said picket line of their own volition." Country Club East, Inc., had no contract with any of the parties plaintiff in this action. It "did have a contract with . . . Salem Electric Company, whereby Salem Electric Company was to furnish certain labor [and] materials for the completion of electrical work on Country Club East, Inc.'s premises." "[T]he employees of Salem Electric Company who were on strike at the sites of Country Club East, Inc. in this case were not organized in a Union but had signed membership authorization cards requesting to be represented by Local 755, International Brotherhood of Electrical Workers, AFL-CIO."

Two judgments signed by Judge Lupton, each dated 9 September 1970, appear in the record. *(Note:* According to the "STIPULATION" one or both was signed on 14 September 1970.) One of these is designated in the record as "VOLUNTARY DISMISSAL (Beck Case)." The provisions thereof are quoted below:

"THIS CAUSE coming on to be heard before the undersigned Superior Court Judge, on motion of the plaintiff that it be permitted to take a voluntary dismissal of this cause, and it appearing to the Court that no Complaint or Answer has been filed and that the motion is appropriate and should be allowed;

"NOW, THEREFORE, IT IS ORDERED and ADJUDGED that on motion of plaintiff, this cause be, and it is hereby, dismissed under the provisions of Rule [41(a)(2)] of the North Carolina Rules of Civil Procedure and that the plaintiff be taxed with the costs.

"AND IT IS FURTHER ORDERED and ADJUDGED that this order hereby revokes the Voluntary Dismissal Order heretofore entered in the cause by the undersigned judge on September 9, 1970."

The other judgment is designated simply "VOLUNTARY DISMISSAL" and appears to have been entered in an action entitled "COUNTRY CLUB EAST, INC. v. JIMMY BECK, FREDDIE SMITH, LARRY LAWSON, and ANDERSON LINVILLE, and all other persons

acting in concert with the above-named defendants, jointly and severally." The provisions thereof are quoted below:

"THIS CAUSE coming on to be heard before the undersigned Superior Court Judge, on motion of the plaintiff that it be permitted to take a voluntary dismissal of this cause, and it appearing to the Court that no Answer has been filed and that no judgment can be recovered against the plaintiff for other than the costs and that the motion is appropriate and should be allowed;

"And it further appearing, and the court so finds, that no harm has resulted to the defendants as a consequence of this action;

"Now, THEREFORE, IT IS ORDERED and ADJUDGED that on motion of plaintiff, this cause be, and it is hereby, dismissed under the provisions of Rule [41(a)(2)] of the North Carolina Rules of Civil Procedure and that the plaintiff be taxed with the costs.

"IT IS FURTHER ORDERED and ADJUDGED that the bond given in this cause be, and is hereby dissolved and that the principal and surety on said bond are hereby released from all liability on said bond."

The judgment signed by Judge Gambill appears in the record under the caption, "JUDGMENT (Both Cases)." It recites that the causes were consolidated by consent and came on "to be heard in chambers during a pretrial conference during which conference certain stipulations were made as set out herein and upon which stipulations and pleadings the defendant moved for judgment in its favor pursuant to Rule 12(c)." The judgment then recites, following the words, "[a]nd it appearing to the Court," factual matters admitted in the pleadings or in the "STIPULATION" as set forth above. In addition, the judgment contains the following: "And it further appearing and the Court finding as a fact that the terms of the temporary restraining order did not prohibit the kind of picketing, i.e., informational picketing, which the plaintiffs allege in their complaints to have been intended by them."

The judgment concludes as follows:

"And upon the foregoing pleadings, findings, and stipulations of fact as agreed upon by counsel for all parties to this

action, the Court is of the opinion that the motion of the defendant for judgment in its favor upon the pleadings and stipulations should be allowed on the grounds that plaintiffs have failed to state a claim upon which relief can be granted; and further that there is no genuine issue as to any material fact; that the affidavit of Ira B. Hall was sufficient to warrant the issuance and continuance of the temporary restraining order; that Judge Lupton found sufficient probable cause to issue said order; that when the dismissal of the action and restraining order was taken, upon the advice of able counsel, all of the work by the defendant's subcontractors had been completed and all picketing had ceased, including not only the kind of picketing described in the temporary restraining order but informational picketing as well, which was the kind of picketing which plaintiffs alleged to have been intended by them and yet was not prohibited by the temporary restraining order; that the continued existence of the temporary restraining order had become moot; and that the entry of the voluntary dismissal of the action and temporary restraining order by Judge Lupton cannot be construed as unlawful or without probable cause or as an abuse of process under the facts and circumstances hereinabove stipulated.

"NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED that these actions be and the same are hereby dismissed at the cost of the plaintiffs."

Plaintiffs objected and excepted "[t]o the entry of the foregoing Judgment . . . and findings of fact, conclusions of law . . . and [gave] notice of their intention to appeal to the North Carolina Court of Appeals. . . . "

In their appeal, plaintiffs assigned as error the action of the court in "granting defendant's Motion For Judgment on The Pleadings And For Summary Judgment based on the findings of fact and conclusions of law contained in the Court's Judgment. . . . "

The Court of Appeals affirmed the judgment.

*Larry L. Eubanks and W. Warren Sparrow for plaintiff appellants.*

*Womble, Carlyle, Sandridge & Rice by Allan R. Gitter for defendant appellee.*

BOBBITT, Chief Justice.

The Court of Appeals affirmed the judgment on a ground entirely different from that on which Judge Gambill based his decision.

Judge Gambill dismissed the actions on the ground that Judge Lupton's order of 4 September 1970 did not restrain the defendants in the prior action from establishing "informational picket lines" near the entrance to defendant's premises, informing the public of Electric Company's refusal to bargain with them.

The opinion for the Court of Appeals states: "The parties are in agreement that under the circumstances presented here the Superior Court did not have jurisdiction to enter the restraining order because the regulation of peaceful picketing in connection with a labor dispute affecting interstate commerce is preempted by provisions of the National Labor Relations Act." Upon this premise, the Court of Appeals held that Judge Lupton's order of 4 September 1970 was void and that an action for malicious prosecution cannot be maintained in the absence of proof that the process in the prior action was valid.

The records and briefs before us do not contain a judicial admission that Judge Lupton (Superior Court) had no jurisdiction to enter the restraining order of 4 September 1970. Even so, the decision of the Court of Appeals will be considered in the light of the premise on which it is based.

[1] When a prior *criminal prosecution* is the subject thereof, an action for malicious prosecution cannot be maintained unless the prior criminal prosecution was based on valid process. *Moser v. Fulk,* 237 N.C. 302, 74 S.E. 2d 729 (1953), and cases cited; Byrd, *Malicious Prosecution in North Carolina,* 47 N.C. L. Rev. 285, 304 (1969). It is otherwise in actions for false arrest or false imprisonment. *Hawkins v. Reynolds,* 236 N.C. 422, 72 S.E. 2d 874, 36 A.L.R. 2d 782 (1952), and cases cited. Whether an action is maintainable as an action for malicious prosecution or as an action for false arrest or imprisonment often turns upon whether the arrest or imprisonment is under valid process. *Caudle v. Benbow,* 228 N.C. 282, 45 S.E. 2d 361 (1947), and cases cited.

"It is the well-established general rule that there is no liability in tort for the damages caused by the wrongful suing

out of an injunction, unless the circumstances give rise to a cause of action for malicious prosecution. The philosophy of the matter is that an error in granting an injunction is an error of the court, for which there is no recovery in damages unless it is sufficiently intentional to be the basis of a suit for malicious prosecution." 42 Am. Jur. 2d, *Injunctions* § 359 (1969).

[2] Under our decision in *Shute v. Shute,* 180 N.C. 386, 104 S.E. 764 (1920), when a temporary restraining order is dissolved as having been improvidently issued the remedies available to the party who has been wrongfully restrained are as follows: (1) He may recover damages from the party who procured the restraining order and the sureties on his injunction bond without proof of malice or want of probable cause. In this connection, see G.S. 1A-1, Rule 65(e). (2) He may institute an action for malicious prosecution against the party who procured the restraining order and recover damages without. regard to the limit of the bond upon establishing the elements necessary to constitute an action for malicious prosecution.

No decision of this Court has come to our attention which passes upon or considers whether an action for malicious prosecution can be maintained when a prior civil action or proceeding is the subject thereof *and the process therein is invalid.*

Decisions of this Court bearing upon differences between actions for malicious prosecution when the prior action is a civil action or proceeding rather than a criminal prosecution have been accurately summarized as follows:

"North Carolina, as do apparently a slight majority of American jurisdictions, permits an action for malicious prosecution in relation to some civil proceedings. Although recovery in a malicious prosecution action based upon earlier civil proceedings may include elements of damages similar to those recovered in an action based upon a prior criminal prosecution, it is clear that the proof necessary for recovery in the two situations is not identical. Where the tort action grows out of earlier criminal proceedings, the plaintiff is entitled to recover at least nominal damages upon proof that the defendant initiated the proceedings maliciously and without probable cause and that the proceedings terminated in his favor. . . . On the other hand, no cause of action arises, from *the malicious instigation of civil proceedings,* standing alone, even though begun *without*

*probable cause and terminated in plaintiff's favor.* Before any cause of action will exist in connection with malicious, unjustified civil proceedings, they must have resulted *in special damages* beyond those normally incident to a civil proceeding." Byrd, *op. cit.,* at 307-08. (Our italics.)

In the annotation entitled, "Court's lack of jurisdiction of subject matter in granting injunction as a defense in action on injunction bond," 82 A.L.R. 2d 1064, 1065, the author states: "The decisions are generally to the effect that in an action on an injunction bond, the fact that the court or judge granting the injunction did not have jurisdiction of the subject matter of the action or proceeding in which the injunction was issued cannot be invoked as a defense. This rule is usually predicated on the doctrine of estoppel, it being considered that the execution of the bond constitutes an implied affirmation of the jurisdiction of the court or judge to issue the injunction, and that an obligor should not be permitted later to assert the lack of such jurisdiction." The quoted statement is supported by the following cited decisions: *Adams v. Olive,* 57 Ala. 249 (1876); *Boise City v. Randall,* 8 Idaho 119, 66 P. 938 (1901); *Robertson v. Smith,* 129 Ind. 422, 28 N.E. 857, 15 L.R.A. 273 (1891); *Harvey v. Majors,* 129 Kan. 556, 283 P. 663 (1930); *Kimm v. Steketee,* 44 Mich. 527, 7 N.W. 237 (1880); *Johnson v. Howard,* 167 Miss. 475, 141 So. 573 (1932); *Tatavich v. Pettine,* 31 N.M. 479, 247 P. 840 (1926); *District Lodge 34, Lodge 804 I.A.M. v. L. P. Cavett Co.,* 111 Ohio App. 327, 14 Ohio Ops. 2d 292, 168 N.E. 2d 619, 82 A.L.R. 2d 1060 (1959); *McClintock v. Parish,* 72 Okla. 260, 180 P. 689 (1919); *Littleton v. Burgess,* 16 Wyo. 58, 91 P. 832, 16 L.R.A.N.S. 49 (1907).

For general statements substantially in accord with that quoted above, see 43 C.J.S., *Injunctions* § 293, and 42 Am. Jur. 2d, *Injunctions* § 379.

The rationale of the rule embodied in the quoted statement is expressed in *Johnson v. Howard, supra,* as follows: "Where a complainant has secured an injunction and stayed his adversary's proceedings, and thereby caused him to suffer damages, it is too late for the complainant to set up as a defense in an action on the injunction bond a want of jurisdiction in the court to grant the injunction. He is estopped to say that the court granted the injunction without jurisdiction. It does not lie in the mouth of one who has affirmed the jurisdiction of a court

to grant an injunction, where he has accomplished his purpose by the injunction, to afterwards deny such jurisdiction." 167 Miss. at 489, 141 So. at 575.

The facts in *District Lodge 34, Lodge 804 I.A.M. v. Cavett Co., supra,* are more analogous to those in the present case than the facts in the other cited cases. The plaintiffs in the prior action had obtained an injunction in an Ohio court of general jurisdiction upon giving the required injunction bonds. The injunction was upheld as valid by an Ohio appellate court, 103 Ohio App. 45, 136 N.E. 2d 276 (1956), and also by the Supreme Court of Ohio, 166 Ohio St. 508, 143 N.E. 2d 840 (1957). Subsequently, the Supreme Court of the United States reversed the Ohio judgment on the ground that the courts of Ohio had no jurisdiction of the subject matter, an alleged unfair labor practice under the National Labor Relations Act. 355 U.S. 39, 2 L.Ed. 2d 72, 78 S.Ct. 122 (1957).

After stating the general rule, 42 Am. Jur. 2d, *Injunctions* § 379, adds: "In other cases, however, it has been said that where the injunction is void ab initio, there can be no recovery of damages." As authority for this statement, *Mark v. Hyatt,* 135 N.Y. 306, 31 N.E. 1099 (1892), and *Montgomery v. Houston,* 27 Ky. (4 JJ Marsh) 488, 20 Am. Dec. 223 (1830), are cited.

Defendant contends that plaintiffs' actions were properly dismissed because Judge Lupton (the superior court) did not have jurisdiction of the subject matter. This contention is based largely on the excerpt from the opinion of the Court of Appeals of New York in *Mark v. Hyatt,* 135 N.Y. at 311, 31 N.E. at 1100, quoted in the opinion of the North Carolina Court of Appeals, 14 N.C. App. at 747, 189 S.E. 2d at 762, to the effect that compliance with an injunction which is absolutely void is not required and damages resulting from voluntary compliance therewith are not recoverable. Full consideration of that decision seems appropriate.

In *Mark v. Hyatt,* the plaintiff sued the defendants to recover damages allegedly caused by defendants' procurement of an injunction against plaintiff in a prior civil action. This injunction had restrained Mark from manufacturing certain articles under patents held by defendants notwithstanding his contention that the Hyatts had licensed him to do so. Mark obeyed the restraining order until it was dissolved and the prior action dismissed. Mark's action for damages, now under con-

sideration, was dismissed by the trial judge. His appeal was first heard in the Supreme Court, Appellate Division, which affirmed the judgment dismissing Mark's action. 61 Hun. 325, 15 N.Y. Supp. 885 (1891). The opinion states: "While it is clear that the injunction in the Superior Court was erroneously granted, it is not clear that it was granted without jurisdiction." *Id.* at 326, 15 N.Y. Supp., at 886. Seemingly, the trial judge was affirmed without regard to whether the court which issued the injunction had jurisdiction. The opinion concludes: "In the case at bar, not only did the plaintiff fail to establish his allegations of malice, but the entire course of the defendants in prosecuting the superior court suit shows that they must have sincerely believed that the court had jurisdiction." *Id.* at 327, 15 N.Y. Supp., at 886.

Mark's appeal from the Supreme Court, Appellate Division, to the Court of Appeals was considered in *Mark v. Hyatt,* 135 N.Y. 306, 31 N.E. 1099. The opinion of the Court of Appeals states that the court which issued the injunction had jurisdiction of the parties and of the subject matter; that the judgment was not void for want of jurisdiction to hear and determine the matter; and that, although the court had power to grant an injunction, "the power was erroneously exercised in not explicitly limiting its operation." Under these circumstances, Finch, J., said: "[N]o action of trespass will lie to recover the damages unless the prosecution is alleged and proved to have been malicious and without probable cause. We have held that doctrine quite firmly and clearly in cases of injunctions, declaring in substance that, although the restraining order ought not to have been granted and was set aside for that reason, yet the damages incurred, where the proceedings have been regular, cannot be recovered in the absence of an undertaking, *except upon the basis of a malicious prosecution.*" *Id.* at 310-11, 31 N.E. at 1100. (Our italics.)

The excerpt from the opinion on which defendant herein relies was addressed to *Mark's* alternative contention that the restraining order was void and the mere issuance and service thereof constituted a trespass and afforded a basis for his recovery of damages. Immediately following the excerpt on which defendant relies, Judge Finch said: "But he [Mark] answers that the mere service of a copy of the judgment was a trespass, *because the then plaintiff could not be heard to say that the injunction which she caused to be served was void and*

*ineffective.* But on the theory now under consideration it is not the defendant who asserts the void character of the process, but the plaintiff himself, driven to it by the necessity of providing some sort of foundation on which to build up a claim of trespass, and he cannot assert it for his purpose and deny it when it serves hers." *Id.* (Our italics.) In contrast to the factual situation in *Mark v. Hyatt,* herein it is the defendant who seeks to defeat plaintiffs' actions on the ground that the restraining order which the *defendant* procured was issued by a court which had no jurisdiction.

Judge Finch stated plainly that he did not think the injunction was absolutely void but that "[j]urisdiction in the action was full and complete." *Id.* at 312, 31 N.E. at 1100. Even so, the dicta in the quoted excerpts do not deviate from but support and confirm the general rule stated above.

In *Montgomery v. Houston,* 27 Ky. (4 JJ Marsh) 488, 20 Am. Dec. 223, it was held that there was no liability on the injunction bond because the injunction, having been signed by one who had assumed without authority to act as a judge of the court out of which it issued, was manifestly void and should have been disregarded. This rule has been held applicable in respect of orders issued by a justice of the peace who had no authority to issue such orders *under any circumstances. Berger v. Saul,* 113 Ga. 869, 39 S.E. 326 (1901); *Vinson v. Flynn,* 64 Ark. 453, 43 S.W. 146 (1897).

[3] Although the cited decisions directly involved actions to recover on injunction bonds, the principle is applicable in independent actions for malicious prosecution. We hold that a party who procures a temporary injunction from a court of general jurisdiction will not be permitted to defeat an action for malicious prosecution based on the procurement thereof solely on the ground that the court which issued the restraining order did not have jurisdiction of the subject matter. Hence, the ground assigned by the Court of Appeals for its decision is not approved. Even so, to recover herein plaintiffs are required to establish all essentials in an action for malicious prosecution.

[4] It may be conceded, *arguendo,* that the party who violates a temporary restraining order or injunction may not be attached for contempt if and when it is determined that the court issuing the restraining order had no jurisdiction of the subject matter.

*Freight Carriers v. Teamsters Local,* 11 N.C. App. 159, 180 S.E. 2d 461 (1971), *cert. den.,* 278 N.C. 701, 181 S.E. 2d 601 (1971). However, a party is not required to violate a restraining order issued by a court of general jurisdiction in order to preserve his right to recover damages in the event it is determined that he was unlawfully restrained.

Having reached the conclusion that the ground assigned by the Court of Appeals was not a sufficient alternative basis for affirming the judgment, we consider next the ground on which Judge Gambill has based his judgment.

At the outset, we note that the record on appeal is defective. Although a portion of Judge Lupton's temporary restraining order of 4 September 1970 is quoted in the complaints and in the "STIPULATION," the record does not contain the entire order. Nor does it contain a copy of the application for a temporary restraining order and supporting affidavit "of one Ira B. Hall," referred to as the basis of Judge Lupton's order. Nor does it contain a copy of any injunction bond.

Plaintiffs' brief in the Court of Appeals contains what purport to be copies of (1) summons, (2) application and order extending time to file complaint, and (3) temporary restraining order in an action entitled "COUNTRY CLUB EAST, INC., Plaintiff vs. JIMMY BECK, FREDDIE SMITH, LARRY LAWSON, and ANDERSON LINVILLE, and all other persons acting in concert with the above-named defendants, jointly and severally, Defendants." *(Note:* It does not contain a purported copy of the application for the temporary restraining order.)

Under the caption, "Background and Facts," plaintiffs assert in their brief factual matters which are not in the "STIPULATION" and do not appear elsewhere in the record. For example, plaintiffs assert in their brief the following: "From the inception of the strike, employees of Salem. Electric Company picketed peacefully, and on public property, just off the premises of the defendant. This picketing was peaceful and done in such a manner as not to constitute mass picketing." In this connection, it is noted that Beck's allegation "[t]hat said picketing was lawful, nonviolent and peaceful in every respect," was denied by defendant; and the complaint of Local 755 contains no allegation as to whether the picketing was violent or peaceful.

Appellee's brief in the Court of Appeals asserted that "[a] multitude of facts are set out in the appellants' Brief which are completely outside the record." The record provides ample support for this statement.

Under the circumstances we cannot do otherwise than consider the case solely on the basis of what is contained in the record.

[5]  The allegations in the complaints to the effect that Local 755 and members thereof, including Beck, established "informational picket lines" and that the picketing was peaceful, were denied in defendant's answers. The issues so raised were not resolved by any provision of the "STIPULATION." The complaints do not allege, and the "STIPULATION" does not disclose, any particulars concerning the conduct of members of Local 755 which caused the alleged work stoppage. The restraining order signed by Judge Lupton does not refer to an "informational picket line." Upon the present record, we hold that plaintiffs' allegations that they were engaged only in establishing "informational picket lines" and the absence from Judge Lupton's restraining order of any reference *by name* to "informational picket lines," was insufficient as a basis for dismissal of the action on the ground that the order did not purport to restrain the pickets from what they were doing.

We note that the complaints allege that defendant maliciously instituted the prior action and procured the restraining order. Since the decisions of the Superior Court and of the Court of Appeals are based on other grounds, we do not pass upon whether the allegations of the complaint are deficient in respect of the elements of want of probable cause, special damages or otherwise. These questions are not determined and may be considered *de novo* in the further proceedings herein.

The record does not disclose whether Local 755 was a defendant in the prior action. It is not referred to by name in the portion of the restraining order quoted in the complaint. This question may arise: If Local 755 was not a defendant in the prior restraining order action, should its present action be dismissed *on that ground?*

The meager record affords no basis for a consideration of whether the jurisdiction of the Superior Court of Forsyth County under the circumstances of this particular case was

preempted by the National Labor Relations Act and vested exclusively in the National Labor Relations Board. 29 U.S.C. §§ 151 *et seq.; Aircraft Co. v. Union,* 247 N.C. 620, 101 S.E. 2d 800 (1958) ; *Beasley v. Food Fair,* 282 N.C. 530, 193 S.E. 2d 911 (1973) ; *Hanna Mining v. Marine Engineers,* 382 U.S. 181, 15 L.Ed. 2d 254, 86 S.Ct. 327 (1965). See also, Cox, "Labor Law Preemption Revisited," 85 Harv. L. Rev. 1337 (1972). Nor is there a sufficient factual basis to determine whether either plaintiffs or defendant had committed an unfair labor practice. 29 U.S.C. § 158. This question may arise: *If* plaintiffs committed an unfair labor practice of which the National Labor Relations Board had exclusive jurisdiction, should they be permitted to assert interference with their commission of such unfair labor practice as the basis for *special damages* cognizable in an action for malicious prosecution?

We note the following: The record includes interrogatories submitted by defendant in each of the two cases. In each case the interrogatories were answered by an attorney for the plaintiff. Judge Gambill's judgment makes no reference to the interrogatories but recites that it is based on the pleadings and the "STIPULATION." Apparently, the answers to the interrogatories provided the information on which certain of the stipulations were based.

We note further that the record is incorrect in indicating that the caption in one of the cases is "J. D. BECK, B. T. BLAIR, B. M. WAGONER, E. W. DeLAPP, FRED E. SMITH, W. C. ALBERT, H. J. LEONARD and S. G. BAILEY v. COUNTRY CLUB EAST, INC." The record contains the pleadings and proceedings in an action entitled "J. D. BECK v. COUNTRY CLUB EAST, INC." We infer that each of the other seven persons may have instituted a similar action against Country Club East, Inc. However, in this respect as in so many others, the record is incomplete, meager and inexact.

We express no opinion as to whether plaintiffs or either of them may maintain an action for malicious prosecution. We hold solely that the dismissal of the action was premature and without justification either on the ground on which Judge Gambill based his decision or on the alternative ground on which the Court of Appeals affirmed Judge Gambill's judgment.

On this appeal, it is unnecessary to discuss plaintiffs' alternative contention that if they cannot recover in an action for

malicious prosecution they should be permitted to recover in an action for malicious abuse of process. For a discussion of the essentials of an action for malicious abuse of process, see *Barnette v. Woody*, 242 N.C. 424, 431, 88 S.E. 2d 223, 227-28 (1955), and cases there cited.

The decision of the Court of Appeals, which affirmed the judgment dismissing these actions, is reversed. The cause is remanded to the Court of Appeals with direction that it vacate the judgment of the superior court and remand the cause to the superior court for further proceedings on legal principles not inconsistent with those stated in this opinion.

Reversed and remanded.