INDUSTRIAL INNOVATORS, INC. v. MYRICK-WHITE, INC. AND HOMER S. WHITE

No. 8914SC727

(Filed 19 June 1990)

**Injunctions § 16 (NCI3d)— injunction bond—when defendant is entitled to damages**

A defendant is entitled to damages on an injunction bond only when there has been a final adjudication substantially favorable to the defendant on the merits of the plaintiff's claim.

**Am Jur 2d, Injunctions §§ 315, 381, 382.**

APPEAL by plaintiff from order entered 18 January 1989 by *Judge F. Gordon Battle* in DURHAM County Superior Court. Heard in the Court of Appeals 16 January 1990.

*Newsom, Graham, Hedrick, Bryson & Kennon, by Charles F. Carpenter and Richard S. Boulden, for plaintiff-appellant.*

*Glenn, Bentley, Mills and Fisher, P.A., by Stewart W. Fisher, for defendant-appellees.*

GREENE, Judge.

Plaintiff appeals from an award of damages for defendants on a bond executed by plaintiff as security for an injunction against defendants.

On 27 January 1988, the plaintiff filed its complaint alleging the plaintiff employed defendants to develop a control system for the "G & C Sliver Machine," and thereafter plaintiff disclosed certain "confidential and proprietary information" to the defendants and that defendants did communicate such confidential information to competitors of the plaintiff. The plaintiff requested an injunction enjoining the defendants from engaging "in any activity wherein they represent to any other corporation, partnership, or entity, that they are acting on behalf of [the plaintiff] or that they have the right to market certain technology and proprietary information on behalf of [the plaintiff]." The plaintiff also requested the court to determine "the damages [the plaintiff] may have already suffered. . . ."

On 14 March 1988, Judge Wiley F. Bowen issued a preliminary injunction providing in pertinent part:

1.

That Defendants, Myrick-White, Inc. and Homer S. White, are hereby restrained and enjoined from representing to any corporation, partnership, or other entity, that the Plaintiff is interested in licensing, selling, or otherwise providing information regarding certain technology for systems control and operation for fee or otherwise, or that the Defendants can obtain that information from the Plaintiff for a fee.

2.

The Defendants are hereby restrained and enjoined from discussing, providing, communicating, or releasing any information concerning the control systems developed for the Plaintiff or revealing any trade secrets or proprietary information concerning the operation, manufacture, and performance of said control systems and machines.

As a condition for issuance of the preliminary injunction, the plaintiff was required to post a bond in the amount of $10,000.00. On 14 March 1988, the plaintiff posted a bond which was executed by the plaintiff and two individual sureties. On 28 March 1988, the defendants filed an answer and counterclaim denying the material allegations of the complaint and alleging that the plaintiff had "misappropriated the trade secrets of Myrick-White in violation of . . . N.C.G.S. § 66-152 et seq." Defendants attached to their answer and counterclaim a copy of an agreement dated 8 July 1986, between the plaintiff and defendant Myrick-White, Inc. The agreement essentially provided that Myrick-White was to write "an applications software package" for the system produced by the plaintiff and that the "software is to run on the existing 16[-]bit microcomputer being produced by Myrick-White and will have specifications outlined [in this agreement]." In the agreement plaintiff agreed that in the event it became "unable to use the software package to the extent of at least three systems per quarter, Myrick-White will have rights to use the software package along with access to design and manufacturing information and license to use any associated technology, trade secrets, or patents belonging to Industrial Innovators." In the counterclaim the defendants allege the plaintiff had failed to lease three systems per quarter, and this

INDUSTRIAL INNOVATORS, INC. v. MYRICK-WHITE, INC.

[99 N.C. App. 42 (1990)]

default on the part of the plaintiff entitled them to use the software. The agreement finally provided that in the event of a controversy or dispute between the parties relating to the performance of the 8 July 1986 agreement, the matters would be referred to arbitration. The defendants requested the complaint be dismissed and among other things requested damages in the amount of $100,000.00 for the misappropriation of trade secrets.

On 15 March 1988, pursuant to the plaintiff's request that the matter be referred to arbitration, Judge Wiley F. Bowen ordered referral of the matter to arbitration and continued in effect the injunction and bond. On 26 August 1988, the arbitrators entered an award declaring the rights of the parties under the written contract dated 8 July 1986. The award provided in pertinent part:

1. We declare the rights of the respective parties under the written contract dated July 8, 1986, to be as follows:

A.

The Defendant MYRICK-WHITE, INC., is the owner of the 16-bit microcomputer developed by it prior to July 8, 1986, and is joint owner with the Plaintiff, INDUSTRIAL INNOVATORS, INC., of the 16-bit applications software package developed in accordance with the contract between the parties.

By reason of the failure of INDUSTRIAL INNOVATORS, INC., to purchase three applications packages each quarter, MYRICK-WHITE, INC., has a non-exclusive right to market the software applications program, including any technology developed in connection with the 8-bit program developed earlier by MYRICK-WHITE, INC., for INDUSTRIAL INNOVATORS, INC., and incorporated in the 16-bit program, and any technology associated therewith. The associated technology which MYRICK-WHITE, INC., is entitled to use and market includes the patents and technology belonging to INDUSTRIAL INNOVATORS, INC., and incorporated in the drawbox or drafting unit developed by INDUSTRIAL INNOVATORS, INC., for use on the Super Card III carding machine, but does not include the patents and technology belonging to INDUSTRIAL INNOVATORS, INC., and incorporated in the Super Card II and earlier carding machines developed by INDUSTRIAL INNOVATORS, INC. The right of MYRICK-WHITE, INC., to utilize the associated technology belonging to the INDUSTRIAL INNOVATORS, INC., ceases and terminates on July

7, 1991, which is the termination date of the contract between the parties, and MYRICK-WHITE, INC., is not entitled thereafter to make any further use of technology belonging to INDUSTRIAL INNOVATORS, INC.

During the term of the contract, MYRICK-WHITE, INC., is obligated to pay to INDUSTRIAL INNOVATORS, INC., the sum of $500 for each software application program which its [sic] sells or licenses for use on a carding machine, up to 50 during any calendar year, and the sum of $250 for the 51st and each additional software application program which it sells or licenses for use on a carding machine during that calendar year. After July 7, 1991, MYRICK-WHITE, INC., is under no obligation to make such payments to INDUSTRIAL INNOVATORS, INC.

## B.

INDUSTRIAL INNOVATORS, INC., is the owner of all technology and patents developed by it in connection with the Super Card III carding machine and the drawbox or drafting unit incorporated therein, the Super Card II carding machine, or any predecessor carding machine, and is joint owner with MYRICK-WHITE, INC., of the 16-bit applications software package developed in accordance with the contract between the parties.

INDUSTRIAL INNOVATORS, INC., has a non-exclusive right to market the software applications program in competition with MYRICK-WHITE, INC., [sic]. During the term of the contract INDUSTRIAL INNOVATORS, INC., is obligated to pay to MYRICK-WHITE, INC., the sum of $500 for each software application program which its [sic] sells or licenses for use on a carding machine, up to 50 during any calendar year, and the sum of $250 for the 51st and each additional software application program which it sells or licenses for use on a carding machine during that calendar year. After July 7, 1991, INDUSTRIAL INNOVATORS, INC., is under no obligation to make such payments to MYRICK-WHITE, INC.

INDUSTRIAL INNOVATORS, INC., has no right to utilize the 16-bit microcomputer developed by MYRICK-WHITE, INC., or the technology developed by MYRICK-WHITE, INC., and incorporated therein; however, MYRICK-WHITE, INC., is obligated under the contract between the parties to supply INDUSTRIAL INNOVATORS, INC., with all 16-bit microcomputers required by

INDUSTRIAL INNOVATORS, INC., for use in connection with the software applications program during the term of the contract, upon the same terms and conditions, including price, extended to other customers of MYRICK-WHITE, INC. The obligation of MYRICK-WHITE, INC., to supply INDUSTRIAL INNOVATORS, INC., with 16-bit microcomputers ceases and terminates after July 7, 1991.

C.

From and after the expiration of the contract between the parties on July 7, 1991, the parties are joint owners of the 16-bit applications software package developed in accordance with the contract, and each has the right to use, sell, market, and license others to use, the applications software package. The rights of each party to use the technology of the other, and the obligation of MYRICK-WHITE, INC., to supply INDUSTRIAL INNOVATORS, INC., with its requirements for the 16-bit microcomputer cease and terminate upon expiration of the contract.

2. MYRICK-WHITE, INC., is not entitled to recover money damages of INDUSTRIAL INNOVATORS, INC.

On 21 September 1988, Judge Henry W. Hight, Jr. entered the following order:

THIS MATTER coming on for hearing upon plaintiff's Motion to Dissolve Preliminary Injunction and Motion for Damages for Wrongful Injunction;

AND the court having considered the evidence and heard the arguments of counsel makes the following findings of fact:

1. That an Arbitrator[s'] Award was issued in this case dated August 29, 1988.

2. That such award provides findings which in the circumstances of this case are equivalent to a final judgment on the merits.

3. That at this time the defendants' Motion to Determine Damages is not yet ripe for hearing; however, defendants are entitled to a dissolution of the preliminary injunction entered by Judge Milton Read on the 3rd day of May, 1988.

INDUSTRIAL INNOVATORS, INC. v. MYRICK-WHITE, INC.

[99 N.C. App. 42 (1990)]

WHEREFORE, IT IS ORDERED, ADJUDGED AND DECREED as follows:

1. That defendants' Motion to Dissolve Preliminary Injunction is allowed and the injunction granted by the Honorable J. Milton Read, Jr. on the 3rd day of May, 1988 is hereby dissolved.

2. That the hearing to determine damages to which the defendants may be entitled, if any, is hereby continued until the award of the arbitrators has been confirmed by the court.

On 12 December 1988, Judge Anthony Brannon entered an order confirming the award of the arbitrators. On 20 January 1989, Judge F. Gordon Battle, upon defendants' motion for damages for wrongful injunction, entered the following pertinent findings of fact and conclusions of law and order:

*Findings of Fact*

11. That the award of the arbitrators in this case[,] which is now the judgment of the court[,] provides findings which in the circumstances of this case are the equivalent to a ruling in favor of defendants upon the causes of action asserted in the Plaintiff's Complaint.

12. That the Temporary Restraining Order and the two Preliminary Injunctions issued against defendants restrained and enjoined the defendants from discussing, providing, communicating, or releasing any information concerning the computer control system which is the subject of this cause of action. That defendants were thereby restrained from doing business with respect to the computer control system.

13. That considered in light of the award of the arbitrators, defendants had a right to do business with respect to the control system which is the subject of this litigation.

14. That Myrick-White, Inc. sustained lost profits and loss of income from consulting fees in an amount in excess of $10,000, which damages would not have occurred but for the issuance of the Temporary Restraining Order and the Injunctions.

*Conclusions of Law*

2. That Myrick-White, Inc. sustained lost profits and loss of income from consulting fees in an amount in excess of

INDUSTRIAL INNOVATORS, INC. v. MYRICK-WHITE, INC.

[99 N.C. App. 42 (1990)]

$10,000.00, which damages would not have occurred but for the issuance of the Temporary Restraining Order and the Injunctions.

WHEREFORE, IT IS ORDERED, ADJUDGED AND DECREED as follows:

That defendant Myrick-White, Inc. have and recover jointly and severally from Industrial Innovators, Inc. and their surety, Employers Mutual Casualty Company, the sum of $10,000.00.

---

The issues are (I) whether plaintiff's exceptions should be deemed abandoned for failure to comply with North Carolina Rule of Appellate Procedure 10(c); and (II) whether the confirmation of the award of arbitration is equivalent to a finding that the defendants were wrongfully enjoined.

I

Every assignment of error contained in the record on appeal must "state plainly and concisely and without argumentation the basis upon which error is assigned." N.C.R. App. P. 10(c); *Kimmel v. Brett*, 92 N.C. App. 331, 374 S.E.2d 435 (1988). The plaintiff's assignments of error are as follows:

1. The Plaintiff excepts to and assigns as error, the Court's award of $10,000.00 to the Defendants based on the Defendants' Motion for Damages for Wrongful Injunction, said Order being dated January 18, 1989.

2. The Plaintiff excepts to and assigns as error, the Court's sustaining of the Defendants' objection to the proposed testimony of William V. McPherson at the hearing of Defendants' Motion for Damages for Wrongful Injunction on January 11 and 12, 1989.

In these assignments of error the plaintiff states the actions of the trial court with which it is displeased, but it fails to state "the grounds upon which the errors are assigned as required by the rules . . . ." 92 N.C. App. at 335, 374 S.E.2d at 437. "Therefore, in accordance with Rule 10(c), plaintiff's exceptions upon which assignments of error are based are deemed abandoned." *Id.*

## II

Although plaintiff did not comply with Appellate Rule 10(c) in preserving his assignments of error, this court is required to determine, when appellant argues such in his brief, whether the judgment is supported by findings of fact and conclusions of law. N.C.R. App. P. 10(a); *Anderson Chevrolet/Olds, Inc. v. Higgins*, 57 N.C. App. 650, 653, 292 S.E.2d 159, 161 (1982). Accordingly, we address the plaintiff's argument that the findings of fact are insufficient to support the judgment because the trial judge did not determine the defendants were wrongfully enjoined.

Where a defendant seeks to recover damages without the proof of malice or want of probable cause, plaintiff's damages are limited by the amount of the bond, and liability exists only upon a determination that defendant has been "wrongfully enjoined or restrained." N.C.G.S. § 1A-1, Rule 65(c) (1983) (trial court must set bond to cover damages "as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained"); *Stevenson v. N.C. Dept. Ins.*, 45 N.C. App. 53, 56, 262 S.E.2d 378, 380 (1980) (recovery limited "to the amount of the penalty of the injunction bond"); *Electrical Workers Union v. Country Club East*, 283 N.C. 1, 9, 194 S.E.2d 848, 853 (1973) (enjoined party can seek damages on bond without proof of malice or want of probable cause).

There exist three possibilities for determining whether a defendant has been wrongfully enjoined:

One possibility is that liability on the bond is determined solely by the *ultimate* merits. Regardless how circumstances appeared when the provisional order was issued, the plaintiff would be liable if he lost in the ultimate decision on the merits, and he would be relieved of liability if he won. The other basic possibility is that liability is determined solely by preliminary merits. The plaintiff under this view would be liable if the preliminary injunction was erroneous on the basis of evidence adduced at the time, even if a final decision on the merits went in his favor; by the same token he would be relieved of liability if the preliminary order was correct as of the time it was issued, even though he ultimately lost. A combination of these rules is also possible, for instance, a rule that imposes liability if either preliminary error or ultimate error is demonstrated.

Dobbs, *Should Security be Required as a Pre-Condition to Provisional Injunctive Relief?*, 52 N.C.L. Rev. 1091, 1147 (1974) (emphasis in original). North Carolina case law presents a somewhat confusing picture of the standard for determining liability under an injunction bond. *Compare Thompson v. McNair*, 65 N.C. 448, 449 (1870) (impossible to determine whether injunction was "wrongfully sued out, until the action at law is disposed of") *with Blatt Co. v. Southwell*, 259 N.C. 468, 471, 130 S.E.2d 859, 861 (1963) ("no right of action accrues upon an injunction bond until the court has finally decided that plaintiff was not entitled to the injunction, or until something occurs equivalent to such a decision").

Any standard for determining whether the defendant was wrongfully enjoined should be consistent with the very purpose of the bond which is to "require that the plaintiff assume the risks of paying damages he causes as the 'price' he must pay to have the extraordinary privilege of provisional relief." *Dobbs*, at 1149. Consistent with that purpose, and we believe consistent with present North Carolina case law, Professor Dobbs observed:

> The fact that the plaintiff's position seemed sound when it was presented on the *ex parte* or preliminary hearing is no basis for relieving him of liability, since the very risk that requires a bond is the risk of error because such hearings are attenuated and inadequate. To say that proof of the inadequate hearing, against which the bond is intended to protect, relieves of liability on the bond is merely to subvert the bond's purpose. Thus the few cases that seem to deal with this situation seem correct in assessing liability to the plaintiff who loses on the ultimate merits, even when his proof warranted preliminary relief at the time it was awarded.

*Dobbs*, at 1149-1150.

Accordingly, a defendant is entitled to damages on an injunction bond only when there has been a final adjudication substantially favorable to the defendant on the merits of the plaintiff's claim. Such an adjudication is equivalent to a determination that the defendant has been wrongfully enjoined. A final judgment for the defendant which does not address the merits of the claim, i.e., dismissal for lack of jurisdiction, gives rise to damages on the injunction bond only if the trial court determines that defendant was actually prohibited by the injunction "from doing what he was legally entitled to do." *See* Note, *Recovery for Wrongful In-*

*terlocutory Injunctions Under Rule 65(c)*, 99 Harvard L.Rev. 828, 838 (1986).

> This "defendant's entitlement" standard suggests that if a defendant wins a final judgment, but the court has not yet ruled on the merits of the controversy, the defendant should not be allowed to recover unless he also shows that he was entitled to engage in the enjoined activity.

*Id.* A voluntary dismissal of a complaint is equivalent to a finding that the defendant was "wrongfully enjoined." *Blatt*, 259 N.C. at 472, 130 S.E.2d at 862; *Warner, Inc. v. Nissan Motor Corp.*, 66 N.C. App. 73, 78, 311 S.E.2d 1, 4 (1984). A dismissal by stipulation generally precludes an award of damages on an injunction bond. *See* Quick, *The Triggering of Liability on Injunction Bonds*, 52 N.C.L. Rev. 1252, 1269 (1974).

Here, the injunction was granted at plaintiff's request on the grounds that defendants were disclosing information to competitors which was inconsistent with the agreement between the plaintiff and defendants. The award of the arbitrators which was ultimately adopted by the trial court was an adjudication on the merits of the plaintiff's claim, substantially favorable to the defendants and equivalent to a finding that defendants were wrongfully enjoined. Accordingly, the trial court did not err in determining that the defendants were entitled to damages which "would not have occurred but for the issuance of the Temporary Restraining Order and the Injunctions."

Affirmed.

Judges JOHNSON and PARKER concur.