DEMOCRATIC PARTY OF GUILFORD CO. v. GUILFORD CO. BD. OF ELECTIONS

[117 N.C. App. 633 (1995)]

THE DEMOCRATIC PARTY OF GUILFORD COUNTY AND ELLEN EMERSON, INDI-
VIDUALLY AND AS CHAIRPERSON OF THE DEMOCRATIC PARTY OF GUIL-
FORD COUNTY, AND AFRICA S. HAKEEM, Plaintiffs v. GUILFORD COUNTY
BOARD OF ELECTIONS, B. J. PEARCE, JAMES PFAFF AND ROBERT
NEWSOME, III; AND GEORGE GILBERT, SUPERVISOR OF THE GUILFORD
COUNTY BOARD OF ELECTIONS, Defendants

No. 9118SC1144

(Filed 7 February 1995)

1. Appeal and Error § 203 (NCI4th)— temporary restraining
order and subsequent order—notice of appeal from order
only

In an action arising from an election in which plaintiff
obtained a temporary restraining order to extend voting hours by
one hour, defendant subsequently sought as damages the cost of
the extra hour, and the court entered an order denying those dam-
ages, arguments relating to the validity of the temporary restrain-
ing order were not properly before the Court of Appeals because
the notice of appeal appealed only the subsequent order. The
issue of jurisdiction to issue the temporary restraining order is
not decided.

Am Jur 2d, Appeal and Error §§ 290 et seq.

2. Injunctions § 41 (NCI4th)— election hours—temporary
restraining order extending—motion to vacate—expira-
tion of order

There was no error in the court's refusal to vacate a tempo-
rary restraining order extending voting hours because the TRO
expired by operation of law prior to the motion to vacate. There
was no TRO in existence at the time of the motion for the court
to vacate. N.C.G.S. § 1A-1, Rule 65(b).

Am Jur 2d, Injunctions §§ 323 et seq.

3. Injunctions § 44 (NCI4th)— election—temporary restrain-
ing order extending hours—subsequent voluntary dis-
missal—no admission of voluntary restraint

A voluntary dismissal of a complaint which had sought a tem-
porary restraining order extending voting hours was not a *per se*
admission of wrongful restraint which automatically entitled the
defendants to damages because the plaintiffs obtained the only
relief they sought, a one hour extension of voting time, and there

was nothing left to be determined when plaintiffs took their voluntary dismissal. It would be illogical to conclude that a later voluntary dismissal, which did nothing more than terminate the action, could be construed as an acknowledgment that plaintiffs were not entitled to the relief already won.

**Am Jur 2d, Injunctions § 291.**

**Effect of nonsuit, dismissal, or discontinuance of action on previous orders. 11 ALR2d 1407.**

4. **Injunctions § 43 (NCI4th)— election—restraining order extending election hours—damages**
    Judge Freeman used the wrong standard of review in considering defendants' request for damages arising from the issuance of a temporary restraining order extending election hours in Guilford County in a 1990 election and the matter was remanded where Judge Freeman considered only the information presented to the judge who granted the injunction, Judge John, and not all of the information available, including the ultimate merits of the action. Although there was ample evidence to support Judge Freeman's conclusion that defendants are not entitled to damages when considering only the evidence before Judge John, plaintiffs and defendants presented to Judge Freeman conflicting evidence on the issue of the degree of severity of the lines waiting to register to vote and how many people were being disenfranchised because of the long lines.

**Am Jur 2d, Injunctions §§ 323 et seq.**

Judge ORR dissenting prior to 30 December 1994.

Appeal by defendants from order entered 16 May 1991 by Judge William H. Freeman in Guilford County Superior Court. Heard in the Court of Appeals 17 November 1992.

*Smith Helms Mulliss & Moore, by McNeill Smith, Benjamin F. Davis, Jr., and Andrew S. Chamberlin, for plaintiff appellees.*

*Robinson, Bradshaw & Hinson, P.A., by John R. Wester, Robert W. Fuller and J. Daniel Bishop, for defendant appellants.*

COZORT, Judge.

At approximately 7:00 p.m. on 6 November 1990, plaintiff Democratic Party of Guilford County sought and obtained from Guilford

County Superior Court Judge Joseph R. John a temporary restraining order directing the defendant Guilford County Board of Elections to extend the hours of the voting polls in Guilford County by one hour, from 7:30 p.m. until 8:30 p.m. A month later, on 6 December 1990, plaintiffs filed a Rule 41 voluntary dismissal of their action without prejudice. On or about the same day, defendants filed a motion to vacate the temporary restraining order and a request for damages for unlawful restraint. In an order filed 13 May 1991, Superior Court Judge William H. Freeman denied defendants' motion. Defendants appeal. We affirm the denial of the motion to vacate; we remand the issue of damages. A more detailed recitation of the facts and procedural history follows:

On 6 November 1990, North Carolina held a general election. The Guilford County Board of Elections had published notices informing voters that the polls would be open from 6:30 a.m. until 7:30 p.m. On election day, defendant George Gilbert, the Guilford County Supervisor of Elections, received several complaints concerning the length of lines at several polling locations in the county. At approximately 11:00 a.m., plaintiff Ellen Emerson, Chair of the Guilford County Democratic Party, filed a formal written complaint with the Guilford County Board of Elections, requesting an extension of the voting hours until 8:30 p.m. In her request, Ms. Emerson listed 21 specific complaints, alleging various problems including broken machines, and several precincts where the use of only one registration book was causing very long lines for voters to sign in to vote. Supervisor Gilbert personally visited five precincts. The defendant Board took no immediate action on plaintiff Emerson's request. At approximately 3:00 p.m., plaintiff Emerson filed a second written request for an extension of the voting hours. In the second request, plaintiff Emerson requested that the polls remain open until 12:00 midnight.

The defendant Board, consisting of two Republicans and one Democrat, met in the late afternoon hours. Sometime between 4:00 p.m. and 5:00 p.m., Supervisor Gilbert reported the complaints to the Board and informed the Board that steps had been taken in an effort to remedy the problems. At approximately 5:00 p.m., defendant Board member Robert Newsome, III, made a motion to extend the election hours until 8:30 p.m. His motion failed for lack of a second. Neither Mr. Gilbert nor the Board of Elections formally responded to plaintiffs' written complaints. Plaintiffs learned shortly after 5:00 p.m. that the Board of Elections would take no action on plaintiff Emerson's written requests. Shortly after 7:00 p.m., plaintiffs delivered to the

home of Superior Court Judge Joseph R. John a written complaint and motion requesting a temporary restraining order and a preliminary injunction directing the Board of Elections to keep the polls open at all precincts until 10:00 p.m. and that paper ballots be provided to facilitate the process. Plaintiffs presented to Judge John some information, concerning long lines, which had been gathered after 5:00 p.m., when the defendant Board last considered and took no action on plaintiffs' request. At about 7:25 p.m., Judge John signed a temporary restraining order directing the Guilford County Board of Elections to keep the polls open until 8:30 p.m. Judge John immediately telephoned the defendant Board of Elections to inform the Board of his order. Supervisor Gilbert and his staff tried to contact all precincts to instruct them to remain open as ordered by Judge John. Most precincts were contacted before 7:30. Between 391 and 431 voters arrived to vote after 7:30 p.m. and before 8:30 p.m. Between 317 and 349 voters were allowed to vote. Several complaints about the extension of the voting time were heard by the Guilford County Board of Elections. All of the election results from Guilford County were eventually certified by the State Board of Elections.

On or about 6 December 1990, plaintiffs filed a notice of dismissal of their action without prejudice, pursuant to Rule 41 of the North Carolina Rules of Civil Procedure. On or about the same day, defendants filed a motion to vacate Judge John's temporary restraining order and a request for damages resulting from the issuance of the temporary restraining order. Defendants' motion came on to be heard at the 4 February 1991 Civil Term of Guilford County Superior Court. At that hearing, defendants presented evidence that they were damaged in the amount of $12,593.12. The damages included overtime pay for poll workers, overtime pay for building maintenance workers at the Board of Elections, overtime pay for the supervisor and the assistant supervisor of elections, and the cost for conducting the hearings resulting from the complaints filed concerning the polls being open an additional hour. In an order filed 13 May 1991, Judge William H. Freeman denied defendants' motion. In that order, Judge Freeman made 21 findings of fact, consistent with the facts just recited. Judge Freeman made 12 conclusions of law, as follows:

1. That based on the information before the Board of Election as reported to it by defendant Gilbert at or before 5:00 PM, it did not abuse its discretion in denying the plaintiffs' request, and that its actions in this regard were not arbitrary or capricious.

2. That the plaintiffs exhausted all of their effective administrative remedies available at that time and any further attempts to exhaust administrative or other judicial remedies would have been futile.

3. That plaintiffs had legal standing to request equitable remedies and/or judicial review from the Superior Court in Guilford County.

4. That based on the information before the plaintiffs at the time the complaint was filed, they had a reasonable basis for and acted in good faith in requesting equitable relief and/or judicial review from the Superior Court in Guilford County.

5. That based on the information before Judge John, he did not abuse his discretion in issuing the temporary restraining order and that his actions were neither arbitrary nor capricious.

6. That Judge John had the jurisdiction and authority to review the actions of the Board of Elections, to issue the temporary restraining order, and to reverse the decision of the Board of Elections. The Guilford County Board of Elections is a state agency. Under the circumstances its denial of plaintiffs' requests was final agency action and Guilford Superior Court was a proper Court to hear plaintiffs' complaint seeking equitable relief.

7. That the plaintiffs did not wrongfully restrain the defendants.

8. That the voluntary dismissal filed by the plaintiffs and/or the expiration of the temporary restraining order by its own terms in 10 days moots the issue as to the dissolution of the temporary restraining order and the issue of the validity of the temporary restraining order.

9. That neither the voluntary dismissal nor the expiration of the temporary restraining order moots a review by this Court of the issue of whether the plaintiffs wrongfully restrained the defendants.

10. That the voluntary dismissal without prejudice filed by the plaintiffs is not a *per se* admission of wrongful restraint that automatically entitles the defendants to receive damages.

11. That the alleged damages presented by the defendants were part of their legal duty to supervise and conduct elections and are not recoverable from private citizens or groups.

12. That awarding damages against private citizens or groups would impermissibly repress their constitutional rights to contest election improprieties and to vote.

On 7 June 1991, defendants gave notice of appeal from the order entered by Judge Freeman on 13 May 1991. In the record on appeal defendants brought forward 13 assignments of error, which were then consolidated into five arguments in defendants' brief filed in this court. In their brief defendants contend:

(1) That Judge Freeman erred in denying defendants' motion to vacate the temporary restraining order after finding no improper or unlawful conduct, no arbitrary or capricious action, and no abuse of discretion by the Board of Elections;

(2) That Judge John erred in issuing the temporary restraining order absent any evidence of irreparable injury to plaintiffs and absent a bond;

(3) That defendants were entitled to relief as a matter of law under Rule 65(e) because plaintiffs abandoned their claim by voluntarily dismissing their complaint;

(4) That the Board was entitled to recover damages under Rule 65; and

(5) Independent of defendants' entitlement to damages relief, the claims of defendants pursuant to Rule 65(e) are not moot.

**[1]** We first consider the second argument made by defendant, contending that Judge John erred in issuing the temporary restraining order absent any evidence of irreparable injury to plaintiffs and absent a bond. This argument must be dismissed. The defendants' notice of appeal appealed only the order entered by Judge Freeman on 13 May 1991. The defendants did not appeal from the temporary restraining order issued by Judge John on 6 November 1990. "Proper notice of appeal requires that a party 'shall designate the judgment or order from which appeal is taken . . . .' N.C.R. App. P. 3(d) (Cum. Supp. 1989). 'Without proper notice of appeal, this Court acquires no jurisdiction.' " *Von Ramm v. Von Ramm*, 99 N.C. App. 153, 156, 392 S.E.2d 422, 424 (1990) (quoting *Brooks, Com'r of Labor v. Gooden*, 69 N.C. App. 701, 707, 318 S.E.2d 348, 352 (1984). Therefore, all arguments made by defendants concerning the validity of Judge John's order are not properly before this Court.

We do not hold, as Judge Orr suggests in his dissent, that Judge John had jurisdiction to issue the temporary restraining order. We do not decide that issue, because defendants did not properly present that issue in this case. Judge Orr's reliance on *Payne v. Ramsey*, 262 N.C. 757, 138 S.E.2d 405 (1964), for vesting this court with jurisdiction to adjudicate the validity of Judge John's order is misplaced. In *Payne*, there was an appeal directly from the temporary restraining order, which is not the case here. In this case, defendants appealed only from Judge Freeman's order denying defendants' motion to vacate and defendants' motion for damages.

[2] We now turn to defendants' arguments concerning the order entered by Judge Freeman on 13 May 1991. Defendants essentially make two arguments: (1) that Judge Freeman should have vacated the temporary restraining order, and (2) that Judge Freeman should have awarded damages to defendants on the theory of unlawful restraint.

Under Rule 65(b) of the Rules of Civil Procedure, a temporary restraining order "shall expire by its terms within such time after entry, not to exceed 10 days, as the judge fixes, unless within the time so fixed the order, for good cause shown, is extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period." N.C. Gen. Stat. § 1A-1, Rule 65(b) (1990). Under this statute, the temporary restraining order entered by Judge John expired by operation of law on 16 November 1990, some twenty (20) days before the defendants filed their motion asking Judge Freeman to vacate Judge John's temporary restraining order. There was no temporary restraining order in existence at that time for Judge Freeman to vacate.

[3] The only remaining question is whether defendants were entitled to damages based on defendants' allegations that the temporary restraining order entered by Judge John constituted wrongful restraint which caused the Board of Elections to incur more than $12,000.00 in expenses. We first consider defendants' argument that plaintiffs' voluntary dismissal filed on 6 December 1990 constituted a *per se* admission of wrongful restraint which automatically entitled the defendants to receive damages. In support of that argument, defendants rely on *Pinehurst, Inc. v. O'Leary Bros. Realty, Inc.*, 79 N.C. App. 51, 338 S.E.2d 918, *disc. review denied*, 316 N.C. 378, 342 S.E.2d 896 (1986). We find *Pinehurst* distinguishable. In that case, plaintiffs filed a tort action on 23 May 1983. In their answer, defendants asserted counterclaims and obtained an injunction staying fore-

closure proceedings. The case went on to trial and plaintiffs prevailed on one of their claims. Before ending their evidence, defendants took a voluntary dismissal without prejudice on their counterclaims. In entering judgment, the trial court dissolved the foreclosure injunction defendants had obtained. In finding the plaintiffs entitled to damages under Rule 65, we stated:

> Because the only purpose for obtaining the injunction was to have their rights fully adjudicated upon the trial of this case, defendants may not prevent the issue from being tried and then be heard to maintain that the judgment is erroneous because that issue has not been determined.

*Id.* at 65, 338 S.E.2d at 926.

The differences between *Pinehurst* and the case below are readily apparent. In this case, the plaintiffs obtained the only relief they sought, one hour's extension of voting time, on 6 November 1990. There was nothing left to be determined, as there was in the *Pinehurst* case, when the defendants took their voluntary dismissal on 6 December 1990. With the plaintiffs having won the only issue raised in their complaint, it would be illogical to conclude that a later voluntary dismissal, which did nothing more than terminate the action, could somehow be construed as an acknowledgment that plaintiff was not entitled to the relief it had already won.

**[4]** We next consider Judge Freeman's ultimate conclusion that defendants are not entitled to damages. We find that Judge Freeman used the wrong standard of review in considering defendants' request for damages. This court carefully reviewed the issue of damages for wrongful restraint in *Industrial Innovators, Inc. v. Myrick-White, Inc.*, 99 N.C. App. 42, 392 S.E.2d 425, *disc. review denied*, 327 N.C. 483, 397 S.E.2d 219 (1990). There we held that the trial court ruling on the issue of damages must consider the ultimate merits of the action, the final adjudication of the claim, and not just the information available to the judge who issues the restraining order on the ex parte hearing. *Id.* at 50, 392 S.E.2d at 431. Judge Freeman failed to consider the question of damages under this standard. His conclusion of law no. 5 ("That based on the information before Judge John, he did not abuse his discretion . . .") makes clear that he considered only the information presented to Judge John, and not all the information available, including the ultimate merits of the action, as we required in *Industrial Innovators*. We find ample evidence to support Judge Freeman's conclusion that defendants are not entitled to damages when considering only the evidence before Judge John. The evidence

before Judge John showed that because of long lines caused by only one registration book at some polls and faulty machines at others, potential voters were leaving the polls without voting. The evidence before Judge John supported his decision to extend the voting for one hour to prevent this potential disenfranchisement. However, our inquiry cannot stop there. Judge Freeman was required to consider all the evidence before him, including the final merits of the case. The matter must be remanded for a determination based on all the evidence, unless we can determine that the evidence before Judge Freeman was undisputed. *See Harris v. N.C. Farm Bureau Mutual Ins. Co.*, 91 N.C. App. 147, 150, 370 S.E.2d 700, 702 (1988). After reviewing all the evidence, we find there is a dispute in the evidence which requires that the matter be remanded.

The evidence presented to Judge Freeman by plaintiffs showed that, on 6 November 1990, at least five precincts in Greensboro had only one registration book on election day, causing very long lines to register to vote, while the actual voting machine booths were empty. These long lines were causing some voters to leave without being able to register and vote. Further evidence showed that some machines were not working properly and that the Board of Elections was not promptly responding to requests for help to fix machines. Other evidence from plaintiffs showed that plaintiff Emerson, the County Democratic Party Chair, filed a written complaint, requesting an extension of the voting hours, with the defendant Board of Elections at 11:00 a.m. and again at 3:00 p.m. and that the defendant Board never took any formal action on either request. The plaintiffs learned after 5:00 p.m. that the Board would take no action on the Democratic Party Chair's requests.

The defendants presented evidence to Judge Freeman that Election Supervisor Gilbert personally visited five precincts on election day of 1990. Only one precinct had a line so long that it took as much as an hour to vote. Gilbert informed the Board of Elections of Ms. Emerson's complaints. He informed the Board that, in his opinion, the conditions were improving, and that he had not observed or heard of any lines exceeding 60 to 90 minutes. Gilbert and the Board were aware that state statutes then in effect (N.C. Gen. Stat. § 163-2) permitted but did not require the Board to extend the closing time by one hour to 8:30 p.m. in all precincts where voting machines were in use. In Gilbert's opinion the lines in 1990 were not as bad as in some previous elections, especially 1988. On the basis of their own observations and Gilbert's report, the Board declined Emerson's request to

extend the polling hours. On the issue of damages, Gilbert testified that after the election, eight challenges were filed over the polls staying open until 8:30 p.m. pursuant to Judge John's order. Gilbert calculated the Board's additional expenses incurred as a result of keeping the polls open until 8:30 p.m. Those expenses came to $12,593.12 and included overtime pay for poll workers, overtime pay for building maintenance workers at the Board of Elections, overtime pay for Gilbert and his assistant, and the cost for conducting the hearings resulting from the challenges filed after the election.

We find enough conflict in the evidence to require that the case be remanded for a new determination, based on all the evidence, of whether the plaintiffs' seeking a temporary restraining order amounted to wrongful restraint justifying damages. Plaintiffs and defendants presented to Judge Freeman conflicting evidence on the issue of the degree of severity of the lines waiting to register to vote and how many people were being disenfranchised because of the long lines. Since Judge Freeman conducted the first hearing under a misapprehension of law as to what evidence should be considered, both plaintiffs and defendants shall be permitted to introduce additional evidence on this issue. In summary, the portion of Judge Freeman's order denying defendants' motion to vacate the temporary restraining order is affirmed. The portion of Judge Freeman's order denying defendants' request for damages is remanded for a new hearing.

Affirmed in part and remanded in part.

Judge GREENE concurs.

Judge ORR dissents to this opinion prior to 30 December 1994.

Judge ORR dissenting.

I respectfully dissent in part from the majority's opinion. First, the majority declines to address the correctness of Judge John's issuance of the Temporary Restraining Order (TRO) on the grounds that the TRO was not appealed from. In light of the procedural and factual history of this case, I disagree with declining to address this question. In this regard, I do not find *Von Ramm* to be controlling. Here, the defendants properly appealed from the final order of Judge Freeman and set forth an assignment of error raising the question of the TRO's validity. Considering the language in our Supreme Court's Writ of Prohibition in *Payne v. Ramsey*, 262 N.C. 757, 138 S.E.2d 405 (1964), the question of the jurisdictional authority of Judge John to

grant the TRO should be reviewed. In *Payne*, the Supreme Court specifically stated in regard to a question concerning the grant of a TRO by a Superior Court Judge regarding certain election officials, "the Superior Court . . . as well as the Judge of the Superior Court who issued said two temporary restraining orders, do not have jurisdiction to institute and maintain said actions or to issue said restraining orders but that the remedy, if any, is . . . to appeal to the North Carolina State Board of Elections . . . ."

The reasoning in *Payne* is of particular significance when viewed in the light of the potential problems arising from the type of conduct at issue in the case *sub judice*. Under the majority's reasoning, anyone could appear in the waning hours of an election before any trial judge and obtain a TRO requiring a county board of elections to keep the polls open beyond the statutory limits and overrule the decision of the local board to not extend the hours. Such an action would appear, according to the majority, not only to be permissible, but would leave the Board without any recourse since the TRO's practical effect would terminate at the closing of the polls. Since there are numerous remedies for post-election relief if warranted under our laws, the rights of candidate and voters would be protected without the conduct complained of here.

Under my view of the law, I would conclude that Judge John did not have jurisdiction to stay the closing of the polls and extend the hours for voting. That, plus the lack of a bond being posted, would constitute wrongful restraint *per se*.

As *Pickard v. Castillo*, 550 S.W.2d 107 (1977) notes: "It has been a long established rule that once the election process commences, the courts of this State have no jurisdiction to interfere with the political rights of the people to hold an election" and "[f]urthermore, the entire election process is a matter for legislative regulation and control." (Citation omitted). "As to such matters, the law does not purport to substitute the judgment of a judge (or jury) for that of duly elected officials, and the judiciary should not, in the absence of a clear mandate, interfere in the conduct of an election after the election process has begun . . . ." *Id.* at 111.

Finally, I do not disagree with the conclusion of the majority that defendants' claim of wrongful restraint should be remanded because the trial court used the incorrect standard of review. I would, however, remand for a new hearing on the issue of damages only since, as

previously noted, the lack of jurisdiction to enter the TRO would constitute worngful restraint *per se.*