Bolier & Co., LLC v. Decca Furniture (USA), Inc., 2015 NCBC 52.

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| CATAWBA COUNTY | 12 CVS 2832 |

BOLIER & COMPANY, LLC and
CHRISTIAN G. PLASMAN,

         Plaintiffs,

v.

DECCA FURNITURE (USA), INC.,
DECCA CONTRACT FURNITURE,
LLC, RICHARD HERBST, WAI THENG
TIN, TSANG C. HUNG, DECCA
FURNITURE, LTD., DECCA
HOSPITALITY FURNISHINGS, LLC,
DONGGUAN DECCA FURNITURE CO.
LTD., DARREN HUDGINS and DECCA
HOME,

         Defendants,

v.

CHRISTIAN J. PLASMAN a/k/a
BARRETT PLASMAN,

         Third-Party
Defendant.

**ORDER AND OPINION**

{1}    **THIS MATTER** is before the Court upon (i) Plaintiffs Bolier & Company, LLC ("Bolier" or the "Company") and Christian G. Plasman's ("Chris Plasman") (collectively, "Plaintiffs") Motion to Amend Complaint ("Motion to Amend Plaintiffs' First Amended Complaint" or "Motion to Amend Complaint"); (ii) Defendants Decca Furniture (USA), Inc. ("Decca USA"), Decca Contract Furniture, LLC, Decca Hospitality Furnishings, LLC, Richard Herbst ("Herbst"), Darren Hudgins, and Wai Theng Tin's (collectively, "Defendants")[1] Motion to Dismiss Plaintiffs' First Amended Complaint ("Motion to Dismiss Plaintiffs' First Amended Complaint" or

---

[1] Plaintiffs have not filed proof of service on Defendants Tsang C. Hung, Decca Furniture, Ltd., Dongguan Decca Furniture Co. Ltd., or Decca Home.

"Motion to Dismiss Complaint"); (iii) Defendants' Motion to Strike Supplemental Pleadings ("Motion to Strike"); (iv) Defendants' Motion to Dismiss Third-Party Defendant Christian J. Plasman a/k/a Barrett Plasman's ("Barrett Plasman") Counterclaims ("Motion to Dismiss Counterclaims"); (v) Defendant Decca USA's Motion to Disqualify Counsel and Motion for Sanctions ("Motion to Disqualify Plaintiffs' Counsel and for Sanctions" or "Motion to Disqualify"); (vi) Defendant Decca USA's Motion to Enforce Order, Motion for Contempt, and Motion for Sanctions ("Decca USA's Motion to Enforce Order, for Contempt, and for Sanctions" or "Motion to Enforce"); and (vii) Plaintiffs' Motion to Amend Preliminary Injunction, to Dissolve Portions of the Preliminary Injunction and Award Damages, and Motion for Sanctions ("Motion to Amend the P.I. Order, for Damages, and for Sanctions" or "Motion to Amend or Dissolve") (collectively, the "Motions") in the above-captioned case.

{2}     Having considered the parties' Motions, the briefs in support of and in opposition to the Motions, the evidence of record, and the arguments of counsel made at the March 26, 2015 hearing held in this matter, the Court hereby **GRANTS** Plaintiffs' Motion to Amend Plaintiffs' First Amended Complaint, consistent with the Court's Order and Opinion; **GRANTS in part** and **DENIES as moot in part** Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint; **DENIES as moot** Defendants' Motion to Strike; **GRANTS in part** and **DENIES as moot in part** Defendants' Motion to Dismiss Counterclaims; **GRANTS in part** and **DENIES in part** Defendant Decca USA's Motion to Disqualify Plaintiffs' Counsel and for Sanctions; **GRANTS in part** and **DENIES in part** Defendant Decca USA's Motion to Enforce Order, for Contempt, and for Sanctions; and **DENIES** Plaintiffs' Motion to Amend the P.I. Order, for Damages, and for Sanctions.

*Law Offices of Matthew K. Rogers, PLLC by Matthew K. Rogers for Plaintiffs Bolier & Company, LLC and Christian G. Plasman and Third-Party Defendant Christian J. Plasman a/k/a Barrett Plasman.*

*McGuireWoods LLP by Robert A. Muckenfuss, Elizabeth Zwickert Timmermans, and Andrew D. Atkins for Defendants Decca Furniture (USA), Inc., Decca Contract Furniture, LLC, Richard Herbst, Wai Theng Tin, Tsang*

*C. Hung, Decca Furniture, Ltd., Decca Hospitality Furnishings, LLC, Dongguan Decca Furniture Co. Ltd., Darren Hudgins, and Decca Home.*

Bledsoe, Judge.

I.

PROCEDURAL HISTORY

{3} Bolier is a North Carolina LLC. In this case, Chris Plasman – the minority 45% owner of Bolier under the relevant operating agreement – has pled claims, both individually and directly by Bolier, against Decca USA – the majority 55% owner of Bolier under the relevant operating agreement – and others for alleged misconduct and wrongdoing.[2] The case was originally filed in October 2012, assigned to this Court (Murphy, J.), and subsequently removed to the United States District Court for the Western District of North Carolina (Voorhees, J.) in December 2012.[3] The federal court entered a preliminary injunction in February 2013 ("P.I. Order"), concluding that Chris Plasman had improperly acted for Bolier without Decca USA's authorization or consent and restricting Chris Plasman's further involvement with the LLC. After the federal court dismissed Plaintiffs' federal copyright infringement claim in September 2014 and declined to exercise supplemental jurisdiction over the remaining state law claims, the federal court remanded the case to this Court in September 2014 for all further proceedings.

{4} The Motions have been fully briefed, and the Court held a hearing on the Motions on March 26, 2015, at which all parties were represented by counsel. The Motions are now ripe for resolution.

II.

BACKGROUND

{5} The Court does not make findings of fact on motions to dismiss under Rule 12(b)(6), but only recites those facts included in the First Amended Complaint that

---

[2] Chris Plasman contends that he is a 50/50 owner of Bolier based on an alleged oral agreement with a representative of Decca USA, (Am. Compl. ¶ 52), but Bolier's operating agreement, entered into after this alleged oral agreement, provides that Chris Plasman holds a 45% minority interest and Decca USA holds a 55% majority interest in the Company.

[3] Case No. 5-12-cv-00160-RLV-DSC.

are relevant to the Court's determination of Defendants' Motion to Dismiss Complaint. *See, e.g., Concrete Serv. Corp. v. Investors Grp., Inc.,* 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986). The Court recites relevant facts from the First Amended Complaint and the other evidence of record as those facts and that evidence are relevant and properly considered for the determination of the other Motions before the Court.

{6} In 2003, Chris Plasman and Defendant Tsang C. Hung ("Tsang") agreed to jointly own, manage and operate Bolier, a business previously established by Chris Plasman. (Am. Compl. ¶¶ 39–42.) Bolier was a family name of Chris Plasman. (Am. Compl. ¶ 41.) Barrett Plasman is Chris Plasman's son (together with Chris Plasman, "the Plasmans") and served as Bolier's Operations Manager. (Third Party Compl. ¶ 12; Am. Compl. ¶ 162.) According to Plaintiffs, Tsang directed that Decca USA own Tsang's interest in Bolier. (Am. Compl. ¶ 43.)

{7} Decca USA is a wholly-owned subsidiary of Decca China, and Defendant Herbst is an officer of Decca China and president of Decca USA. (Am. Compl. ¶¶ 7, 17–18, 43.)

{8} Plaintiffs contend that Herbst informed Chris Plasman that Tsang and Herbst intended Bolier to be operated as a "50/50 partnership for operations and profitability," but that on paper, Decca China was required to have a majority ownership interest in Bolier (through its wholly-owned subsidiary Decca USA) due to certain Hong Kong Stock Exchange rules that required Decca China to be the majority owner of all of its subsidiary ownerships. (Am. Compl. ¶¶ 51–52.)

{9} Under Bolier's Operating Agreement, Decca USA owns a fifty-five percent (55%) majority ownership in Bolier and Chris Plasman a forty-five percent (45%) minority ownership in Bolier. (Am. Compl. Ex. 5, p. 4.)[4]

{10} Chris Plasman served as Bolier's President and Chief Executive Officer from 2003 until October 19, 2012, when Herbst advised Chris Plasman that the Plasmans' employment with Bolier was terminated because the Company's revenues were insufficient to support the Plasmans' annual salaries. (*See* Am.

---

[4] Bolier's Operating Agreement is attached as Exhibit 5 to Plaintiffs' First Amended Complaint.

Compl. ¶¶ 68, 151–63.) Chris Plasman contends that Decca USA, acting through Herbst, did not have authority to terminate his employment because he was a 50/50 partner in Bolier, despite the fact that Bolier's Operating Agreement expressly provided that he held a 45% minority ownership interest. (*See* Am. Compl. ¶¶ 152, 241; Oper. Agmt., p. 4.) The Plasmans refused to acknowledge their termination and continued to report to work at Bolier through January 14, 2013, when they were finally locked out of Bolier's offices. (Am. Compl. ¶¶ 166–77.) Plaintiffs further contend that Decca USA overcharged Bolier for administrative, legal, and accounting services (Am. Compl. ¶¶ 234–35), and that Decca USA reduced Bolier's profitability by usurping Bolier's business opportunities and shifting profits away from Bolier for the benefit of Decca USA, Decca China, and other Decca Group businesses (Am. Compl. ¶¶ 235–49).

{11} Plaintiffs allege claims against Defendants for (i) Breach of Contract, (ii) Fraud and Constructive Fraud, (iii) Self-Dealing, (iv) Misappropriation of Corporate Opportunities, (v) Trademark, Trade Dress and Copyright Infringement and Misappropriation of Intellectual Property, (vi) Conspiracy to Defraud, (vii) Fraud, (viii) Fraud and Obtaining Property Under False Pretenses, (ix) Tortious Interference, (x) Conspiracy to Tortiously Interfere, (xi) Conversion, (xii) Conspiracy to Convert, (xiii) Defamation, (xiv) Misappropriation of Trade Secrets, (xv) Piercing the Corporate Veil, (xvi) Unfair and Deceptive Trade Practices, (xvii) Distribution to Shareholders Pursuant to N.C. Gen. Stat. § 55-6-40, and (xviii) Purchase of Chris Plasman's Interests or Dissolution Pursuant to N.C. Gen. Stat. § 57C-6-02.

III.

ANALYSIS

i. Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint/
Plaintiffs' Motion to Amend Plaintiffs' First Amended Complaint

{12} Defendants contend that Plaintiffs' First Amended Complaint contains numerous deficiencies that require its dismissal. In response, Plaintiffs seek to amend their Complaint for a second time to add additional parties and allege facts and claims that Plaintiffs allege arose after this action was remanded from federal

court. Defendants argue that none of the fatal flaws in the First Amended Complaint have been remedied in the proposed Second Amended Complaint,[5] that Plaintiffs' Motion to Amend Complaint should therefore be denied as futile, and that this action should accordingly be dismissed.

{13} The Court agrees with Defendants that Plaintiffs' First Amended Complaint and proposed Second Amended Complaint reveal fatal deficiencies on their face. First, while alleging that a derivative demand has been made, Plaintiffs have pled and captioned this action as asserting direct claims by both Chris Plasman and Bolier. (*See, e.g.*, Am. Compl., p. 1; Proposed Second Am. Compl., p. 1.) At the same time, Plaintiffs acknowledge, and Bolier's Operating Agreement provides, that Chris Plasman is a 45% owner of Bolier (Oper. Agmt., p. 4), that the institution of a lawsuit by Bolier requires the consent of Bolier's Majority in Interest, (Oper. Agmt., § 6.1(a)), and Plaintiffs do not assert or contend that Decca USA, Bolier's 55% owner, has authorized or consented to the filing of the original Complaint or either amended complaint. Accordingly, it appears to the Court from the face of the proposed Second Amended Complaint that Chris Plasman is not authorized to bring direct claims in Bolier's name, and must instead bring such claims, if at all, as derivative claims on Bolier's behalf as one of its members. *See Swenson v. Thibaut*, 39 N.C. App. 77, 98, 250 S.E.2d 279, 293 (1978) ("A corporation is, beyond question, a necessary party to any litigation brought derivatively in its name, and is customarily captioned a nominal defendant." (internal citation omitted)); *Crouse v. Mineo*, 189 N.C. App. 232, 240, 658 S.E.2d 33, 38 (2008) (discussing standing to file derivative claim where PLLC member was without authority to cause the PLLC to sue in its own right).

{14} In a similar vein, Plaintiffs seek dissolution of Bolier in both the First Amended Complaint and proposed Second Amended Complaint, but fail to include

---

[5] Plaintiff's proposed Second Amended Complaint is attached to Plaintiffs' Motion to Amend Complaint.

Bolier as a party defendant as required under N.C. Gen. Stat. § 57D-6-03,[6] which requires that "[a] proceeding . . . to dissolve an LLC is to be brought against the LLC."

{15} Plaintiffs' current and proposed Complaints also fail to comply with the requirement under Rule 8 of the North Carolina Rules of Civil Procedure that a pleading contain "[a] short and plain statement of the claim sufficiently particular to give the court and the parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved showing that the pleader is entitled to relief, and [a] demand for judgment for the relief to which he deems himself entitled." N.C. R. Civ. P. 8(a)(1)–(2) (2014). In particular, both Plaintiffs' First Amended Complaint and proposed Second Amended Complaint fail to make clear which claims are brought by Chris Plasman and which claims are purportedly brought by Bolier, and neither specifies against which Defendant or Defendants the alleged claims are asserted. Further, the current Complaint and proposed Second Amended Complaint assert a number of claims for relief in a confusing, unfocused manner – for example, titling two claims for relief together in a single section but subtitling the claims as having stated three causes of action. *See, e.g., Kingsdown, Inc. v. Hinshaw*, 2015 NCBC 28 ¶ 20, fn. 6 (N.C. Super. Ct. Mar. 25, 2015), http://www.ncbusinesscourt.net/opinions/2015_NCBC_28.pdf (recognizing that federal courts have dismissed confusing complaints for failing to comply with Rule 8).

{16} While sympathetic to Defendants' contentions here, the Court is mindful of the directives from our appellate courts that the Court must determine "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not," *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987) (citation omitted), and further that "[t]he complaint must be

---

[6] In Plaintiffs' proposed Second Amended Complaint, Plaintiffs' request for judicial dissolution is pled as alternative relief and is sought under N.C. Gen. Stat. § 57C-6-02, as replaced and revised by N.C. Gen. Stat. § 57D.

liberally construed, and the court should not dismiss the complaint unless it appears beyond a doubt that the plaintiff could not prove any set of facts to support his claim which would entitle him to relief," *Block v. Cnty. of Person*, 141 N.C. App. 273, 277–78, 540 S.E.2d 415, 419 (2000). The Court also recognizes that it must pay heed to the dictates of Rule 15 of the North Carolina Rules of Civil Procedure, which provides that "leave shall be freely given [to a plaintiff seeking to amend the complaint] when justice so requires," N.C. R. Civ. P. 15(a), and our appellate courts' instruction that a trial court should deny a motion to amend a pleading only if the court finds "'(a) undue delay, (b) bad faith, (c) undue prejudice, (d) futility of amendment, [or] (e) repeated failure to cure defects by previous amendments.'" *Strickland v. Lawrence*, 176 N.C. App. 656, 666–67, 627 S.E.2d 301, 308 (2006) (quoting *Carter v. Rockingham Cnty. Bd. Of Educ.*, 158 N.C. App. 687, 690, 582 S.E.2d 69, 72 (2003)).

{17} Applying these considerations to its review of Plaintiffs' First Amended Complaint and to Plaintiffs' Motion to Amend Complaint, the Court concludes, in its discretion, that it is appropriate in these circumstances – where the action is still in its early stages in this forum, and Plaintiffs have sought to add parties, claims, and allegations based on conduct purportedly arising after the filing of the First Amended Complaint – to provide Chris Plasman another chance to amend the operative complaint to attempt to state legally cognizable claims in this action.

{18} As a result, the Court concludes that (i) Plaintiffs' Motion to Amend Plaintiffs' First Amended Complaint should be granted as to Plaintiff Chris Plasman, (ii) Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint should be granted as to claims purportedly brought directly by Bolier but denied as moot as to claims brought by Chris Plasman individually,[7] and (iii) Plaintiff Chris Plasman should be permitted an opportunity to file a revised second amended

---

[7] To the extent Plaintiffs' First Amended Complaint can be read as having asserted derivative claims by Chris Plasman on behalf of Bolier – a reading the Court concludes is not supported by the allegations or form of the pleading – the Court nonetheless concludes, in the interest of clarity, that Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint as to any such claims should also be denied as moot.

complaint, without prejudice to Defendants' right to move to dismiss the second amended complaint, in whole or in part, as Defendants may deem appropriate.

ii. Defendants' Motion to Strike

{19} On November 19, 2012, the Plasmans filed Plaintiffs' and Third Party Defendant's Answer to Defendant's Counterclaims and Counterclaims to Third Party Complaint ("Answer and Counterclaims") that contained a section titled "Answer and Supplemental Facts Supporting Claims for Relief in the Complaint and Third Party Defendant's Counterclaims" ("Supplemental Facts Section"). Defendants argue that the "Supplemental Facts Section" in the Answer and Counterclaims is "an end run around the procedure for supplementing [Chris Plasman's] pleadings," (Defs.' Br. Supp. Mot. Strike, p. 2), as well as an impermissible attempt to amend Barrett Plasman's meritless third-party counterclaims, (*see* Answer and Counterclaims, pp. 16–17). Therefore, Defendants argue that the Court should ignore the unfiled, proposed third-party counterclaims of Barrett Plasman, and strike the allegations in the Supplemental Facts Section that relate to Chris Plasman under Rules 12(f) and 15(d) of the North Carolina Rules of Civil Procedure.[8]

{20} The Court agrees with Defendants that the Plasmans' "Supplemental Facts Section" of the purported Answer and Counterclaims is not proper under Rules 12 and 15. Nevertheless, in light of the Court's decision to allow Chris Plasman to file a revised second amended complaint, which may include the Plasmans' purported "Supplemental Facts" or other facts as Chris Plasman may choose to advance and which will require all of the pleadings to be re-filed, the Court concludes that Defendants' Motion to Strike should be denied as moot at this time, without prejudice to Defendants' right to move to dismiss or strike the

---

[8] Rule 12(f) states, "Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 30 days after the service of the pleading upon him or upon the judge's own initiative at any time, the judge may order stricken from any pleading any insufficient defense or any redundant, irrelevant, immaterial, impertinent, or scandalous matter." N.C. R. Civ. P. 12(f) (2014). Rule 15(d) states, "Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit him to serve a supplemental pleading setting forth transactions or occurrences or events which may have happened since the date of the pleading sought to be supplemented . . . ." N.C. R. Civ. P. 15(d) (2014).

allegations in the revised second amended complaint as Defendants may deem appropriate.

iii. <u>Defendants' Motion to Dismiss Barrett Plasman's Counterclaims</u>

{21} Defendants contend that Third-Party Defendant Barrett Plasman's counterclaims should be dismissed because Barrett Plasman "lacks standing to bring claims on behalf of Bolier and his counterclaims otherwise fail to state a claim upon which relief can be granted and must be dismissed pursuant to Rules 8, 12(b)(1), and 12(b)(6)." (Defs.' Br. Supp. Mot. Strike, p. 2.) As an initial matter, the Court agrees that on the evidence of record Barrett Plasman does not have standing to assert claims on behalf of Bolier because he is not a member or manager of Bolier, *see* N.C. Gen. Stat. § 57D-8-01(a)(1), and Bolier has not authorized Barrett Plasman to bring suit on behalf of the company, (Oper. Agmt., § 6.1(a)). Accordingly, to the extent Barrett Plasman seeks to bring claims on behalf of Bolier, directly or derivatively, those claims should be dismissed with prejudice. *See generally Crouse*, 189 N.C. App. 232, 658 S.E.2d 33 (50% PLLC owner lacked authority to require the PLLC to sue in its own right without 50% co-owner's consent).

{22} Further, given that the Court has permitted Chris Plasman to file a revised second amended complaint, the Court notes that Defendants will thereafter be required to answer or otherwise respond and may or may not elect to include third-party claims against Barrett Plasman, depending on the revised complaint allegations and Defendants' ability to assert third-party claims under N.C. R. Civ. P. 14 against "a person not a party to the action who is or may be liable to [the party] for all or part of the [party's] claim against him." N.C. R. Civ. P. 14(a) (2014). Accordingly, in light of the current procedural context, the Court concludes, in its discretion, that Defendants' Motion to Dismiss Barrett Plasman's Counterclaims in his individual capacity should be denied as moot at this time, without prejudice to Defendants' right to move to dismiss any individual claims or third-party counterclaims that Barrett Plasman may file against Defendants in this action, as Defendants may deem appropriate.

iv. <u>Defendant Decca USA's Motion to Disqualify Plaintiffs' Counsel and for Sanctions</u>

{23} Defendant Decca USA moves to disqualify Plaintiffs' counsel, Matthew K. Rogers, as counsel for Bolier in this action because Decca USA, Bolier's majority owner and the "Majority in Interest" under the Bolier Operating Agreement, did not authorize or consent to Mr. Rogers' retention as counsel for Bolier at any time. (Def.'s Mot. Disqualify Counsel, ¶ 3 (citing Oper. Agmt., § 6.1(a) and noting that Bolier's Operating Agreement provides that "all decisions or actions of the Company, the Company's 'managers' . . . or the Members shall require the approval, consent, agreement or vote of the Majority in Interest").) Based on its review of the relevant record, the Court agrees with Decca USA and concludes that Mr. Rogers should be disqualified from representing Bolier in this action because it is undisputed that he was never retained by the Majority in Interest (Decca USA) under the Bolier Operating Agreement.

{24} Nevertheless, Mr. Rogers represented at the hearing in this matter that although he pled this action as a direct action in Bolier's name, he does not now represent Bolier, has never represented Bolier, intended to bring claims for Chris Plasman, both individually and derivatively on behalf of Bolier, had pled Bolier as a party plaintiff rather than a nominal defendant based on a misunderstanding of the proper form for derivative claim pleading, and will not plead Bolier as a party plaintiff in any revised second amended complaint. Although the Court agrees with Decca USA that Mr. Rogers may not represent Bolier in this action, based on Mr. Rogers' representations at the hearing and the current procedural posture of the case, the Court concludes that sanctions against Mr. Rogers on this Motion are not warranted at this time. *Couch v. Private Diagnostic Clinic*, 146 N.C. App. 658, 666, 554 S.E.2d 356, 363 (2001) ("There is no question that a Superior Court, as part of its inherent power to manage its affairs, to see that justice is done, and to see that the administration of justice is accomplished as expeditiously as possible, has the authority to impose reasonable and appropriate sanctions upon errant lawyers practicing before it."). Nevertheless, the Court may reconsider Decca USA's request

for sanctions should Mr. Rogers attempt to represent Bolier directly in this action hereafter without Decca USA's consent.

    v.   <u>Decca USA's Motion to Enforce Order, for Contempt, and for Sanctions</u>

{25}  Decca USA contends that the Plasmans willfully violated the P.I. Order entered in federal court prior to the remand of the case to this Court and moves to enforce the P.I. Order, hold the Plasmans in contempt, and for sanctions under N.C. R. Civ. P. 70 and N.C. Gen. Stat. § 5A-23(a1).

{26}  The facts supporting Decca USA's Motion to Enforce are straightforward and appear undisputed. According to Decca USA, Herbst notified the Plasmans that their employment with Bolier was terminated, effective on October 19, 2012. (Def.'s Br. Supp. Mot. Enforce Order, p. 2.) The Plasmans thereafter "refused to leave Bolier or accept their terminations and unilaterally took steps to hijack the company" by, *inter alia*, unlawfully opening bank accounts in Bolier's name to divert approximately $600,000 of Bolier's customer payments to these accounts. (Def.'s Br. Supp. Mot. Enforce Order, p. 3.) The Plasmans also allegedly converted at least $62,192.15[9] of these diverted funds to pay their salaries and attorney's fees after they were terminated (the "Funds at Issue"). (*See* Def.'s Br. Supp. Mot. Enforce Order, p. 3.)

{27}  Faced with these facts, the federal court concluded that "the prior conduct of [Chris] Plasman in continuing to manage and to control the operations of Bolier . . . has deprived the majority [Decca USA] of this right" to control Bolier's corporate affairs, (Def.'s Br. Supp. Mot. Enforce Order, Ex. 2, p. 4)[10], and entered the P.I. Order on February 27, 2013. The P.I. Order enjoined the Plasmans and Defendants in numerous respects as follows:

    1)    Plaintiff [Chris] Plasman is to be enjoined from holding himself out as President or CEO of Bolier & Co.;

---

[9] Based on the evidence of record, it appears to the Court that the Plasmans paid at least $62,192.15 of the diverted funds to themselves for salaries and attorney's fees after they were terminated. *See* Def.'s Br. Supp. Mot. Enforce Order, Exhibits 1–3.

[10] The federal court's P.I. Order is attached to Decca USA's Brief in Support of its Motion to Enforce Order at Exhibit 2.

2) Third-Party Defendant Barrett Plasman is to have no further authority as an employee of Bolier & Co.;

3) The Plasmans are to be prohibited from entering Decca USA or Bolier & Co. property without Decca USA's permission, and upon reasonable request, Decca USA shall grant such permission to Plaintiff [Chris] Plasman in his role as minority member-manager;

4) The Plasmans are to be enjoined from removing any property or fixtures from Bolier & Co.'s or Decca USA's premises without the written authorization or permission of Decca USA;

5) The Plasmans are otherwise enjoined from interfering with Decca USA's or Bolier & Co.'s business operations;

6) Within five business days of the entry of this Order, the Plasmans are to return to Decca USA's Bank of America lockbox all of Bolier & Co.'s monies, including but not limited to customer payments, diverted to them or to any bank account under their control, and such funds must be paid with a certified check;

7) Within five business days of the entry of this Order, the Plasmans are required to provide an accounting to Decca USA, also to be filed with the Court, of all funds that were diverted from October 19, 2012, to the present, detailing who made the payments, when the payments were received, the payment amounts, and the purpose of the payments;

8) Decca USA shall provide Plaintiff [Chris] Plasman with copies of Bolier & Co.'s financial statements on a monthly basis;

9) At Plaintiff [Chris] Plasman's request, all of Bolier & Co.'s books and records, including royalty and licensing payments, may be inspected and examined once every six months by an accountant of Plaintiff [Chris] Plasman's choice at his expense at the Decca USA office or at a mutually agreeable location;

10) Decca USA shall provide Plaintiff [Chris] Plasman with copies of Bolier & Co.'s federal, state, and local income tax returns for each year beginning with 2012;

11) Decca USA shall provide Plaintiff [Chris] Plasman with any other information regarding Bolier & Co.'s affairs as is just and reasonable, or

otherwise required by N.C. Gen. Stat. § 57C-3-04 or Bolier & Co.'s Operating Agreement;

12) A member-manager meeting shall be held bi-annually, in April and October, in which Plaintiff [Chris] Plasman may provide Bolier & Co. with his input regarding the company's management and affairs; and

13) With regard to these member-manager meetings, Decca USA shall provide Plaintiff [Chris] Plasman with at least ten days', and no more than fifty days', notice of the date, time, and place of such meetings.

{28} Rather than return Bolier's diverted funds as Decca USA contends was required under paragraph 6 of the P.I. Order, the Plasmans instead filed a document titled "Response to Court Order" in federal court on March 6, 2013, stating that they intended to comply "with the spirit of the [P.I.] Order," admitting that they diverted Bolier's funds in order to pay themselves post-termination wages and their attorney's fees on the theory that they were employees of Bolier until January 14, 2013, and seeking clarification from the federal court concerning whether the P.I. Order covered these funds, thus requiring their return to Decca USA. (Def.'s Br. Supp. Mot. Enforce Order, p. 4.) The federal court did not respond to or act on the Plasmans' Response to Court Order prior to remanding the case to this Court in September 2014. Despite Defendants' demands, the Plasmans have continuously refused to return the Funds at Issue and have not yet provided the accounting required under paragraph 7 of the P.I. Order. (Def.'s Br. Supp. Mot. Enforce Order, p. 4.) Decca USA argues that the P.I. Order is unambiguous, plainly requires the Plasmans to return to Decca USA the Funds at Issue and provide the required accounting, and that the Plasmans' actions have prevented Decca USA from using the diverted funds to support Bolier. (Def.'s Br. Supp. Mot. Enforce Order, p. 4.)

{29} The Court finds the Plasmans' interpretation of the P.I. Order without merit. Indeed, pursuant to Bolier's Amended Operating Agreement, Decca USA is the Majority in Interest in Bolier with authority to make corporate decisions on behalf of Bolier, and Decca USA advised the Plasmans on behalf of Bolier that their

employment at Bolier was terminated on October 19, 2012. Further, the federal court specifically held that "[b]ound by agreement, statute, and doctrine, the majority in interest otherwise has the right to control corporate affairs," and expressly held that Decca USA, as Bolier's Majority in Interest, had the right to terminate Chris Plasman's employment with Bolier without cause. (P.I. Order, p. 4 (citing *Gaines v. Long Mfg. Co.*, 234 N.C. 340, 344–45, 67 S.E.2d 350, 354 (1951)); (*see also* Defs.' Br. Opp. Mot. Am. P.I. Order, Ex. 3, Employment Agreement § 1.4(d).)

{30} The federal court further observed that "Plaintiff [Chris] Plasman has offered little in the way of establishing his reasonable expectation of indefinite employment as Bolier & Co.'s President and CEO" and concluded that "[i]n light of the unambiguous terms of the Operating Agreement and the Employment Agreement, and mindful of North Carolina's employment-at-will doctrine," Chris Plasman was not entitled to a preliminary injunction re-installing him as President and CEO of Bolier. (P.I. Order, p. 6.)

{31} In addition, the federal court noted that Chris Plasman's prior conduct in continuing to manage and control Bolier's operations "deprived the majority [Decca USA] of this right," (P.I. Order, p. 4), and specifically found that the Plasmans could have begun diverting Bolier's funds as early as October 19, 2012, the day they were terminated from Bolier, (P.I. Order, p. 5).

{32} Moreover, the evidentiary record before the federal court in entering the P.I. Order included copies of each of eleven checks made payable to the Plasmans in the total amount of $62,192.15, and the federal court was advised that these checks were purportedly for payment of the Plasmans' wages, expenses, and attorney's fees incurred between their termination on October 19, 2012 and when they were finally locked out of Bolier on January 14, 2013. (Defs.' Resp. Opp. Mot. To Show Cause for Sanctions, Exs. 3–4 and the First Declaration of Darren L. Hudgins, filed in federal court on February 11, 2013.)

{33} Based on these facts, the Court concludes that the federal court intended that the Funds at Issue paid from the Bolier accounts to the Plasmans to constitute

funds covered by paragraph 6 of the P.I. Order, and therefore, that the federal court ordered that these funds be returned to "Decca USA's Bank of America lockbox" within five days of the entry of the P.I. Order. The Court further concludes that the federal court required the Plasmans, within the same five-day time period, to provide an accounting to Decca USA of "all funds that were diverted from October 19, 2012, to the present, detailing who made the payments, when the payments were received, the payment amounts, and the purpose of the payments," (P.I. Order ¶ 7), and rejected any contentions by the Plasmans that they were unable to provide the requested information. As a result, the Court concludes that Defendant Decca USA's Motion to Enforce Order, for Contempt, and for Sanctions should be granted, in part, to require the Plasmans to pay to Decca USA the Funds at Issue in the amount of at least $62,192.15, plus interest at the legal rate from March 6, 2013, and to provide the accounting to Decca USA required under paragraph 7 of the P.I. Order.

{34} As to Decca USA's Motion for Contempt and Motion for Sanctions, however, the Court declines to hold the Plasmans or the Plasmans' attorney in contempt of court or award Decca USA the attorney's fees it incurred in obtaining the relief requested in the Motion to Enforce. Although the Court finds that Chris Plasman's argument that he remained a Bolier employee from October 19, 2012 through January 14, 2013 is contrary to the language and intent of the P.I. Order, the Court is persuaded that the Plasmans' prompt effort to gain clarification of the P.I. Order's terms – and specifically their obligations concerning the required accounting and the repayment of the Funds at Issue – exhibits sufficient good faith that a finding of contempt or an award of attorney's fees is not appropriate in the circumstances.

{35} In particular, the Plasmans filed a Response to Court Order on March 6, 2013 – within the time period for compliance under the P.I. Order – explaining that they believed they had fully complied with paragraphs 6 and 7 of the P.I. Order and requesting clarification of their specific obligations to provide a further accounting or repay the Funds at Issue in light of Decca USA's March 1, 2013 demand that the

Plasmans comply with the P.I. Order in these specific respects. Decca USA responded two days later by filing a Motion to Enforce Court Order, Motion for Contempt, and Motion for Attorney's Fees, which the parties thereafter fully briefed. The federal court, however, did not respond to the Plasmans' request for clarification or decide Decca USA's motion before remanding the case to this Court in September 2014.

{36} Although the Court does not find the Plasmans' stated need for clarification from the federal court compelling or persuasive, particularly in light of the Court's conclusion that the language of the P.I. Order includes the accounting and the Funds at Issue, the Court does find that the Plasmans' Response to Court Order reflects a genuine dispute (or at least the Plasmans' genuine confusion) concerning the Plasmans' obligations under the P.I. Order. Given that dispute (or confusion), and particularly the fact that the Plasmans timely sought clarification of their responsibilities from the federal court, the Court cannot conclude that the Plasmans' failure to comply with the P.I. Order was willful, *see Davis v. Davis*, 748 S.E.2d 594, 603 (N.C. Ct. App. 2013) ("a failure to obey an order of a court cannot be punished by contempt proceedings unless the disobedience is willful") (quoting *Mauney v. Mauney*, 268 N.C. 254, 257, 150 S.E.2d 391, 393 (1966)), or otherwise should be subject to sanctions in these particular circumstances, *see, e.g.*, *Daniels v. Montgomery Mut. Ins. Co.*, 320 N.C. 669, 674, 360 S.E.2d 772, 776 (1987) ("[A] trial court has the inherent power to tax a plaintiff with the reasonable costs, including attorney's fees incurred by a defendant in a proceeding in which a plaintiff has failed to comply with a court order."). Accordingly, the Court concludes that to the extent Decca USA's Motion to Enforce seeks to hold the Plasmans and Mr. Rogers in contempt and recover attorney's fees for the Plasmans' failure to comply with the P.I. Order, Decca USA's Motion should be denied.

vi. Motion to Amend the P.I. Order, for Damages, and for Sanctions

{37} In their Motion to Amend or Dissolve, Plaintiffs contend that the Court should (i) order Defendants to respond to Plaintiffs' discovery requests and award sanctions by requiring "Decca to pay for all discovery to discern detailed damages

amounts caused to Bolier," (Pls.' Mot. Am. P.I. Order, p. 4); (ii) order Defendants to post a substantial bond to secure the P.I. Order; (iii) award Chris Plasman monetary damages for alleged losses he has suffered from entry of the P.I. Order; and (iv) amend or dissolve the P.I. Order because Decca USA has mismanaged Bolier's affairs, "misappropriated Bolier's corporate opportunities, and aggressively self-dealt for the benefit of wholly-owned" Decca USA affiliate companies, (Pls.' Br. Supp. Mot. Am. P.I. Order, p. 1–2). The Court disagrees with each of Plaintiffs' contentions.

### a. Sanctions

{38} First, Plaintiffs' request for sanctions is not properly before this Court because Plaintiffs have failed to comply with this Court's February 4, 2015 Order requiring Plaintiffs to reformat and refile Plaintiffs' Motion to Show Cause, for Sanctions and Supplemental Motion for Preliminary and Permanent Injunction filed in federal court on January 23, 2013 in the event Plaintiffs wished to seek this Court's consideration of the relief sought in that Motion. Moreover, the Court's February 4, 2015 Order stayed all discovery in this case pending resolution of the parties' outstanding motions. As a result, Defendants are under no obligation to respond to Plaintiffs' discovery requests at this time and cannot be held liable for sanctions or costs associated with their present failure to do so. Accordingly, the Court concludes that Plaintiffs' request for sanctions should be denied.

### b. Injunction Bond

{39} Next, Plaintiffs contend that the P.I. Order should be dissolved for failure to require a bond and, alternatively, request this Court to require Decca USA to post a bond of between $5 million and $10 million to secure the P.I. Order. First, the P.I. Order is not invalid for failure to require a bond. The law is clear that a federal district court has broad discretion to set a bond amount as the court sees fit and may waive a security requirement altogether as Judge Voorhees did here. *Pashby v. Delia*, 709 F.3d 307, 332 (4th Cir. 2013) (citation omitted); *see also Aoude v. Mobil Oil Corp.*, 862 F.2d 890, 896 (1st Cir. 1988) ("posting of a bond is not a jurisdictional prerequisite to the validity of a preliminary injunction"); *Clarkson Co.*

*v. Shaheen*, 544 F.2d 624, 632 (2nd Cir. 1976) ("[B]ecause, under Fed. R. Civ. P. 65, the amount of any bond to be given upon the issuance of a preliminary injunction rests within the sound discretion of the trial court, the district court may dispense with the filing of a bond." (citations omitted)). North Carolina law is to similar effect: "[t]he trial court has power not only to set the amount of security but to dispense with any security requirement whatsoever where the restraint will do the [party] no material damage, and where the applicant for equitable relief has considerable assets and is able to respond in damages if [the party] does suffer damages by reason of a wrongful injunction." *Stevens v. Henry*, 121 N.C. App. 150, 154, 464 S.E.2d 704, 707 (1995) (alterations and quotations omitted) (quoting *Keith v. Day*, 60 N.C. App. 559, 562, 299 S.E.2d 296, 298 (1983)).[11]

{40} Moreover, in electing to enter injunctive relief here, the federal court specifically recognized that "in light of Plaintiffs' claim that Defendants have engaged in self-servicing transactions, the imposition of safeguards enabling Plaintiff [Chris] Plasman to check the threat of self-dealing would be appropriate." (P.I. Order, p. 4). As a result, Judge Voorhees implemented a number of safeguards to protect Chris Plasman's minority interest in Bolier, including: (1) requiring Decca USA to provide Chris Plasman with copies of Bolier's financial statements on a monthly basis; (2) allowing Chris Plasman to inspect Bolier's books and records every six months; (3) requiring Decca USA to provide Chris Plasman copies of Bolier's federal, state, and local income tax returns for each year beginning with 2012; (4) requiring Decca USA to provide Chris Plasman any other information regarding Bolier's affairs as is just and reasonable or otherwise required by N.C. Gen. Stat. § 57C-3-04 or Bolier's Operating Agreement; and (5) requiring a member-manager meeting to be held bi-annually (and providing notice of such meetings) to permit Chris Plasman to provide Bolier with his input regarding Bolier's management and affairs. In addition, Judge Voorhees invited Chris Plasman "to

---

[11] North Carolina courts also look to federal decisions for guidance on Rule 65 issues. *See, e.g.*, *Keith*, 60 N.C. App. at 560–61, 299 S.E.2d at 297.

submit additional, reasonable requests for preliminary, injunctive relief" to check the threat of self-dealing by Decca USA. (P.I. Order, p. 4).

{41} Accordingly, the Court concludes that the P.I. Order is valid and enforceable, *see generally* Georgene Vairo, 16 Moore's Federal Practice § 107.43 (3d ed. 2014) ("Typically, the state court 'will give effect to all pleadings filed in federal court and to all rulings made by the federal court' while the case was in federal court."),[12] and should not be dissolved for failure to require a bond, particularly in light of the substantial safeguards Judge Voorhees imposed for the benefit of Chris Plasman. *See Stevens*, 121 N.C. App. at 154, 464 S.E.2d at 707.

### c. Damages/Lost Salary

{42} Next, Plaintiffs contend that the Court should award Chris Plasman damages of "at least $574,660.36 for lost salary" foregone since the issuance of the P.I. Order. (Pls.' Mot. Am. P.I. Order, ¶ 20.) There are only two ways to obtain damages for entry of an injunction under Rule 65, neither of which is available to Plaintiffs on the current record. First, a party may institute an independent action for malicious prosecution, an avenue Chris Plasman has not yet elected to pursue. *Int'l Brotherhood of Elec. Workers v. Country Club East, Inc.*, 283 N.C. 1, 9, 194 S.E.2d 848, 853 (1973) (citation omitted). Second, a party may seek damages under Rule 65(e) against a party who procured the injunction without a showing of malice or want of probable cause in procuring the injunction by demonstrating that "such [an] injunction was wrongful in its inception, or at least was continued owing to some wrong on the part of plaintiff." *M. Blatt Co. v. Southwell*, 259 N.C. 468, 471, 130 S.E.2d 859, 861 (1963). Moreover – and fatal to Chris Plasman's contention here –

> [A party] is entitled to damages on an injunction bond only when there has been a final adjudication substantially favorable to the [enjoined party] . . . . Such an adjudication is equivalent to a determination that

---

[12] *See also* 16 Moore's Federal Practice § 107 App. 113 ("Orders entered by the district court prior to a remand order are not nullities. Insofar as they are interlocutory and are included within the action or the part of the action remanded, they would ordinarily remain in effect, following the remand, until the state court took appropriate action to modify or set them aside.").

the [enjoined party] has been wrongfully enjoined. A final judgment for the [enjoined party] which does not address the merits of the claim, i.e., dismissal for lack of jurisdiction, gives rise to damages on the injunction bond only if the trial court determines that defendant was actually prohibited by the injunction 'from doing what he was legally entitled to do.'

*Indus. Innovators, Inc. v. Myrick-White, Inc.*, 99 N.C. App. 42, 50–51, 392 S.E.2d 425, 431 (1990) (citation omitted). Because there has not been a final adjudication on the merits substantially favorable to Chris Plasman in this case, his motion for an award of damages must be denied.

      d. <u>Dissolution/Amendment of P.I. Order</u>

{43} Finally, although Plaintiffs argue that Decca USA has mismanaged the company since Chris Plasman was removed as President and CEO, the Court finds that Plaintiffs have failed to offer persuasive or compelling evidence to show that Plaintiffs will suffer irreparable harm if Chris Plasman is not returned to the chief management position at Bolier, that Defendants can no longer show a likelihood of success on the merits, or that equity otherwise demands that the P.I. Order should be dissolved or amended at this time.[13] To the contrary, the Court is persuaded that the continuation of the P.I. Order — in particular, management by Decca USA, Bolier's Majority in Interest — will not cause Chris Plasman irreparable harm, is in the best interests of Bolier, and remains necessary to protect Bolier from irreparable harm. The federal court not only found that Chris Plasman had interfered with Bolier's business operations by diverting Bolier's funds to himself and others but that injunctive relief was necessary to ensure management control would be exercised by the Majority in Interest as provided under the Bolier Operating Agreement. The federal court crafted a thoughtful, well-reasoned, and narrowly-tailored P.I. Order that placed managerial and operational control in

---

[13] In federal court, "[a] plaintiff seeking a preliminary injunction must establish [(1)] that he is likely to succeed on the merits, [(2)] that he is likely to suffer irreparable harm in the absence of preliminary relief, [(3)] that the balance of equities tips in his favor, and [(4)] that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008) (citation omitted). In North Carolina state court, an applicant must only show the first two prongs, likelihood of success and irreparable harm. *See A.E.P. Indus., Inc. v. McClure*, 308 N.C. 393, 401, 302 S.E.2d 754, 759–60 (1983).

Decca USA, the 55% owner, and imposed numerous safeguards to protect Chris Plasman's 45% minority interest in the company. This Court has not been persuaded, by either evidence or argument, that the federal court's carefully drafted P.I. Order should be modified, amended, or dissolved in any respect.[14]

{44} Accordingly, for each of these reasons, the Court concludes that Plaintiffs' Motion to Amend the P.I. Order, for Damages, and for Sanctions should be denied.

IV.

CONCLUSION

{45} **WHEREFORE**, the Court hereby **ORDERS** as follows:

I. Plaintiffs' Motion to Amend Plaintiffs' First Amended Complaint is hereby **GRANTED**, and the Court hereby **ORDERS** that Plaintiffs shall be permitted to file a revised second amended complaint, in form and content consistent with the conclusions and rulings set forth in this Order and Opinion, no later than thirty (30) days from the date of the entry of this Order and Opinion, without prejudice to Defendants' right to move to dismiss the second amended complaint, in whole or in part, as Defendants may deem appropriate;

II. Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint is hereby **GRANTED in part** and **DENIED as moot in part**, and the Court hereby **ORDERS** that Plaintiffs' claims purportedly brought directly by Bolier are hereby dismissed with prejudice and that Defendants' Motion to Dismiss Plaintiffs' claims brought by Chris Plasman individually (or purportedly as derivative claims on behalf of Bolier) is **DENIED as moot**;

---

[14] Plaintiffs also argue that the federal court was not permitted to rely on un-notarized declarations in granting in part Defendants' request for a preliminary injunction. (Pls.' Br. Supp. Mot. Am. P.I. Order, p. 5.) Sworn declarations, however, are proper evidence in federal court on a motion for preliminary injunction. *See* 28 U.S.C. § 1746 (2015) ("Wherever . . . any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration . . . in writing of the person making the same . . . such matter may . . . be supported . . . by the unsworn declaration . . . in writing of such person which is subscribed by him, as true under penalty of perjury, and dated . . . .").

III. Defendants' Motion to Strike is hereby **DENIED as moot**, without prejudice to Defendants' right to move to dismiss or strike Plaintiffs' allegations in the second amended complaint as Defendants may deem appropriate;

IV. Defendants' Motion to Dismiss Barrett Plasman's Counterclaims is hereby **GRANTED in part** and **DENIED as moot in part**, and the Court hereby **ORDERS** that the third-party counterclaims purportedly brought by Bolier, directly or derivatively by Barrett Plasman, are hereby dismissed with prejudice and that Defendants' Motion to Dismiss Counterclaims brought by Barrett Plasman individually is **DENIED as moot,** without prejudice to Defendants' right to move to dismiss any claims or third-party counterclaims that Barrett Plasman may file against Defendants in this action, as Defendants may deem appropriate;

V. Defendant Decca USAs' Motion to Disqualify Counsel and for Sanctions is hereby **GRANTED in part and DENIED in part**, and the Court hereby **ORDERS** that Plaintiffs' counsel, Matthew K. Rogers, is hereby **DISQUALIFIED** from further representation of Bolier in this action and that Defendants' Motion for Sanctions is **DENIED**;

VI. Defendant Decca USA's Motion to Enforce Order, for Contempt, and for Sanctions is hereby **GRANTED in part** and **DENIED in part**, and the Court hereby **ORDERS** that:

(1) The Plasmans shall pay to Decca USA all Funds at Issue that the Plasmans diverted from Bolier to themselves or to any bank account under their control that were used to pay the Plasmans' purported wages, expenses, and attorney's fees after their employment with Bolier was terminated on October 19, 2012, in the total amount of at least $62,192.15, plus interest at the legal rate of 8% per annum from March 6, 2013, within thirty (30) days of the entry of this Order and Opinion, such funds to be payable by certified check;

(2) The Plasmans shall provide an accounting to Decca USA of all Bolier funds that the Plasmans diverted from October 19, 2012, to the present, detailing who made the payments, when the payments were received, the payment amounts, and the purpose of the payments, within thirty (30) days of the entry of this Order and Opinion; and

(3) Except as otherwise ordered, Decca USA's Motion to Enforce Order, for Contempt, and for Sanctions is hereby **DENIED**;

VII. Plaintiffs' Motion to Amend the P.I. Order, for Damages, and for Sanctions is hereby **DENIED**.

**SO ORDERED**, this the 26th day of May 2015.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Special Superior Court Judge
 for Complex Business Cases